IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>        Plaintiff,<br><br>                    v.<br><br>[1] WALTER R. PIERLUISI-ISERN,<br>[2] AMERICAN MANAGEMENT AND<br>        ADMINISTRATION CORPORATION,<br>        A.K.A. AMAC,<br>[3] ATARDECERES DEL YUNQUE INC.,<br>[4] PIER PROPERTY MANAGEMENT INC.,<br>[5] PRG AFFORDABLE HOUSING<br>        DEVELOPMENT L.L.C.,<br>[6] HGX DOMINICANA SRL,<br>[7] BOSQUE VERDE L.L.C.,<br>[8] JANUS L.L.C.,<br>[9] FIDEICOMISO WMP (WMP TRUST FUND),<br>[10] MARCIA DE LOS ANGELES<br>        GONZÁLEZ-COYA FERNÁNDEZ,<br>[11] WALTER SIMON PIERLUISI GONZÁLEZ-<br>        COYA,<br>[12] MARCIA BEATRIZ PIERLUISI<br>        GONZÁLEZ-COYA,<br>[13] PATRICIA DE LOS ANGELES PIERLUISI<br>        GONZÁLEZ-COYA, and<br>[14] BANCO POPULAR DE PUERTO RICO,<br>        Defendants. | **CIVIL:**<br><br>**FRAUDULENT TRANSFER<br>COMPLAINT**<br>Title 28 U.S.C. § 3304<br>18 U.S.C. § 3664(m)(1)(A)(ii) |

## COMPLAINT

The United States of America hereby brings its Complaint against defendants [1] Walter R. Pierluisi-Isern ("[1] WR Pierluisi") and [2] American Management and Administration Corporation ("[2] AMAC"), and other joined defendants listed below, for causes of action arising under the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001 et seq. ("FDCPA"), and P.R. Laws Tit. 31, § 6231 (2020), as further alleged below:

## Table of Contents

I.      JURISDICTION AND VENUE ................................................................ 3

II.     PARTIES ........................................................................................... 4

    A.    Plaintiff ................................................................................... 4

    B.    Defendants ............................................................................... 4

III.    GENERAL ALLEGATIONS ................................................................. 8

    A.    Real Estate Properties ............................................................... 8

    B.    Affiliates and Insiders ............................................................... 9

IV.     CRIMINAL INVESTIGATION AND FRAUDULENT TRANSACTIONS ........... 10

    A.    Criminal Investigation and Prosecution ....................................... 10

    B.    Scheme to Render Debtors Insolvent ........................................... 14

        1.  Donations of March 3, 2023 .......................................... 14

        2.  Two deposits of more than $3.8 Million in Employment Retention Tax Credits into [2] AMAC's bank account ................................ 15

        3.  $2.9 Million Unsecured Loan of Corporate Funds from [2] AMAC to [1] WR Pierluisi ................................................... 16

        4.  Satisfaction of Half a Million Dollars in Mortgages to Benefit [11] WMP Trust Fund ...................................................... 17

        5.  Deposit of more than $3 Million in Employment Retention Tax Credits into [2] AMAC's bank account ....................................... 18

        6.  $2.2 Million in Unsecured Loans from [2] AMAC to Insiders on May 23, 2023 ........................................................................ 19

        7.  $1.1 Million in Unsecured Loans from [2] AMAC to Insiders on June 29, 2023 ........................................................................ 20

        8.  $2.1 Million in Satisfaction of Mortgages from [14] Banco Popular for Properties Owned by [11] WMP Trust Fund ............................ 21

9.  Transfer of [1] WR Pierluisi's proprietary interest in Florida properties to his children, defendants [11] WS Pierluisi, [12] MB Pierluisi, and [13] PA Pierluisi and his wife [10] MA González-Coya ........................... 24

10. $345,000 in Unsecured Loans from [2] AMAC to [11] WMP Trust Fund ..... 26

11. $40,000 in Unsecured Loans from [1] WR Pierluisi to [2] AMAC ............... 27

12. $800,000 in Unsecured Loans from [2] AMAC to [4] Pier, an Insider ........... 27

C.  Fraudulent Transfers Resulting in Insolvency of [1] WR Pierluisi ..................... 27

D.  Fraudulent Transfers Resulting in Insolvency of [2] AMAC .............................. 29

V.  CAUSES OF ACTION .................................................................................................... 32

Count I – AMAC's Fraudulent Transfers After Incurring Debt to the United States ....... 32

Count II – AMAC's Fraudulent Transfers Without Regard to Date of Judgment ........... 34

Count III – [2] AMAC's Fraudulent Transfers Upon Insolvency ................................... 37

Count IV – [2] AMAC's Fraudulent Transfers to Defraud Creditors Under Puerto Rico Law ...................................................................................................................... 39

Count V – [1] WR Pierluisi's Fraudulent Transfers After Incurring Debt to the United States ................................................................................................................. 41

Count VI – [1] WR Pierluisi's Fraudulent Transfers Without Regard to Date of Judgment ............................................................................................................................ 44

Count VII – [1] WR Pierluisi's Fraudulent Transfers Upon Insolvency ......................... 46

Count VIII – [1] WR Pierluisi's Fraudulent Transfers to Defraud Creditors Under Puerto Rico Law ............................................................................................................. 49

Count IX – Joinder regarding [2] AMAC Disbursed Funds ............................................. 50

Count X – Joinder regarding the Fraudulent Pierluisi Transfers ....................................... 52

VI.  PRAYER FOR RELIEF .................................................................................................... 52

## I.    JURISDICTION AND VENUE

1. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 3301-3307. Venue is proper in this district and division under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the present claim occurred in this judicial district and

division, and a substantial part of the property that is the subject of this action is situated in this judicial district and division.

## II.    PARTIES

### A.    Plaintiff

1. Plaintiff is the United States of America proceeding in its sovereign capacity under Title 28 U.S.C. §§ 1345 and 3301-3308, and 18 U.S.C. § 3664(m)(1)(A)(ii).

### B.    Defendants

1. Defendant [1] WR Pierluisi is a businessman, of legal age, married, President and former Chief Executive Officer ("CEO") of [2] AMAC, who is currently serving a 43-month federal prison sentence in USDC-PR Criminal Case 23-148 (CVR), *United States v. Pierluisi-Isern, et al.* (the "Criminal Case") at FPC Pensacola, 110 Raby Avenue, Pensacola, Florida 32509.

2. Defendant [10] Marcia de los Angeles González Coya Fernández ("[10] MA González-Coya") is a businesswoman, of legal age, married, Vice President of [2] AMAC, and resident of 921 Begonia Road, Apt. 102, Kissimmee, Florida 34747, who is married to Defendant [1] WR Pierluisi and owns property jointly with him under the regime of conjugal partnership of community property of the Civil Code of the Commonwealth of Puerto Rico (the "Conjugal Partnership"). [10] MA González-Coya is named as a defendant to this action because she may claim an interest in properties or transactions as to which plaintiff is seeking a remedy and as a representative of defendant [2] AMAC in relation to properties or transactions as to which plaintiff is seeking a remedy. Defendant [1] WR Pierluisi and [10] MA González-Coya are co-administrators of the Conjugal Partnership. The Conjugal Partnership does not have legal status separate and apart from its co-administrators.

The Conjugal Partnership may claim an interest in properties or transactions as to which plaintiff is seeking a remedy.

3. Defendant [2] AMAC is a corporation organized and registered under the laws of the Commonwealth of Puerto Rico, Register No. 89,232, with offices at 1541 Avenida Ponce de Leon, San Juan, Puerto Rico 00926, and represented since August 1, 2023, by its CEO, Juan Carlos Loubriel-Morales, a businessman of legal age, single, independent contractor, and resident of San Juan, Puerto Rico ("CEO Loubriel"). [2] AMAC is currently serving a sentence in the Criminal Case of three years' probation. [1] WR Pierluisi and [10] MA González-Coya have served as defendant [2] AMAC's President and Vice President, respectively, during times relevant to these proceedings.

4. Defendant [3] Atardeceres del Yunque Inc. ("[3] Atardeceres") is a corporation organized and registered under the laws of the Commonwealth of Puerto Rico, Register No. 172456, with offices at 55 Gambia Street, San Juan, Puerto Rico 00926, represented by its President, defendant [1] WR Pierluisi, and its Vice President, defendant [11] Walter S. Pierluisi González-Coya ("[11] WS Pierluisi"), a businessman of legal age, married, and resident of Guaynabo, Puerto Rico. [3] Atardeceres is named as a defendant to this action because it may claim an interest in properties or transactions as to which plaintiff is seeking a remedy. [3] Atardeceres is owned by [11] WS Pierluisi and his sisters, defendant [12] Marcia Beatriz Pierluisi González-Coya ("[12] MB Pierluisi") and defendant [13] Patricia de los Ángeles Pierluisi González-Coya ("[13] PA Pierluisi"), all defendant [1] WR Pierluisi's children.

5. Defendant [4] Pier Property Management Inc. ("[4] Pier") is a corporation organized and registered under the laws of the Commonwealth of Puerto Rico, Register No. 162383, with offices at 55 Calle Gambia, San Juan, Puerto Rico 00926, represented by defendant

[11] WS Pierluisi and with defendant [1] WR Pierluisi as its Resident Agent at the time of incorporation. [4] Pier is wholly owned by defendant [11] WS Pierluisi, defendant [1] WR Pierluisi's son. [4] Pier is named as a defendant to this action because it may claim an interest in properties or transactions as to which plaintiff is seeking a remedy.

6.   Defendant [5] PRG Affordable Housing Development L.L.C. ("[5] PRG") is a limited liability corporation organized and registered under the laws of the Commonwealth of Puerto Rico, Register No. 405348, with offices at 55 Gambia Street, San Juan, Puerto Rico 00926, represented by defendant [11] WS Pierluisi and with defendant [1] WR Pierluisi as its Resident Agent at the time of incorporation. [5] PRG is wholly owned by defendant [11] WS Pierluisi, defendant [1] WR Pierluisi's son. [5] PRG is named as a defendant to this action because it may claim an interest in properties or transactions as to which plaintiff is seeking a remedy.

7.   Defendant [6] HGX Dominicana SRL ("[6] HGX") is a corporation organized and registered under the laws of the Dominican Republic, with offices at Jose Reyes St. #48, Zona Colonial, 10210, Santo Domingo, Dominican Republic, represented by defendant [11] WS Pierluisi. [6] HGX is owned by [9] WMP Trust Fund (as defined in paragraph 10 below), [11] WS Pierluisi and CEO Loubriel. [6] HGX is named as a defendant to this action because it may claim an interest in properties or transactions as to which plaintiff is seeking a remedy.

8.   Defendant [7] Bosque Verde L.L.C. ("[7] Bosque Verde") is a limited liability company organized and registered under the laws of the Commonwealth of Puerto Rico, Register No. 505630, with offices at 650 Sergio Cuevas, Apartment 1408, San Juan, Puerto Rico 00918, represented by CEO Loubriel. [7] Bosque Verde is wholly owned by CEO Loubriel. [7] Bosque Verde is named as a defendant to this action because it may claim an interest in properties or transactions as to which plaintiff is seeking a remedy.

9. Defendant [8] Janus Builders L.L.C. ("[8] Janus") is a corporation organized and registered under the laws of the Commonwealth of Puerto Rico, Register No. 499031, with offices at 650 Sergio Cuevas, Apt. 1408, San Juan, Puerto Rico 00918, represented by CEO Loubriel. [8] Janus is wholly owned by CEO Loubriel. [8] Janus is named as a defendant to this action because it may claim an interest in properties or transactions as to which plaintiff is seeking a remedy.

10. Defendant [9] Fideicomiso WMP ("[9] WMP Trust Fund") is a trust fund created and registered under the laws of the Commonwealth of Puerto Rico on December 19, 2022, by defendants [1] WR Pierluisi and [10] MA González-Coya, with address at 1 Palma Real Avenue, Apartment 801, Guaynabo, Puerto Rico 00969, represented by defendant [11] WS Pierluisi as fiduciary. The beneficiaries of the [9] WMP Trust Fund are [11] WS Pierluisi, [12] MB Pierluisi and [13] PA Pierluisi, the son and daughters of defendants [1] WR Pierluisi and [10] MA González-Coya. [9] WMP Trust Fund is named as a defendant to this action because it may claim an interest in properties or transactions as to which plaintiff is seeking a remedy.

11. Defendant [11] WS Pierluisi is a businessman, of legal age, married, resident of San Juan, Puerto Rico. [11] WS Pierluisi is named as defendant to this action because he may claim an interest in the properties or transactions as to which plaintiff is seeking a remedy and as representative of defendants [4] Pier, [5] PRG, [6] HGX and [9] WMP Trust Fund. Defendant [11] WS Pierluisi is the son of defendants [1] WR Pierluisi and [10] MA González-Coya.

12. Defendant [12] MB Pierluisi is a married woman of legal age, with address at 1011 Periwinkle Ct., Kissimmee, Florida 34747. [12] MB Pierluisi is named as defendant to this action because she may claim an interest in the properties or transactions as to which plaintiff is seeking a remedy. Defendant [12] MB Pierluisi is the daughter of defendants [1] WR Pierluisi and [10] MA González-Coya.

13. Defendant [13] PA Pierluisi is a single woman of legal age, with address at 921 Begonia Rd., Apt. 102, Kissimmee, Florida 34747. [13] PA Pierluisi is named as defendant to this action because she may claim an interest in the properties or transactions as to which plaintiff is seeking a remedy. Defendant [13] PA Pierluisi is the daughter of defendants [1] WR Pierluisi and [10] MA González-Coya.

14. Defendant [14] Banco Popular de Puerto Rico, ("[14] Banco Popular") is a financial institution insured by the Federal Deposit Insurance Corporation with business offices in Lomas Verdes, Int. Carr 177 y 52, El Señorial, Cupey, San Juan, Puerto Rico 00926. Defendant [14] Banco Popular provided banking services to [1] WR Pierluisi and [2] AMAC and maintained a business relationship that required [14] Banco Popular to know them as customers, inquire about their ownership interests, and inquire about the nature and purpose of their relationships with [14] Banco Popular. Defendant [14] Banco Popular is named as a defendant to this action because it may claim an interest in properties or transactions as to which plaintiff is seeking a remedy.

### III.    GENERAL ALLEGATIONS

1. At all times relevant, and from in or about December 2022 to present, defendants [1] WR Pierluisi and [10] MA González-Coya were married and owned property under the Conjugal Partnership.

2. During their marriage, defendants [1] WR Pierluisi and [10] MA González-Coya had three children who are now of legal age: [11] WS Pierluisi, [12] MB Pierluisi and [13] PA Pierluisi.

A. Real Estate Properties

3. As of October 2022, defendants [1] WR Pierluisi and [10] MA González-Coya owned several real estate properties in Puerto Rico and Kissimmee, Florida, jointly under the Conjugal Partnership, to wit:

a.   A residential property at Urb. Parque de Bucaré, 1 Calle Bromelia, Guaynabo, Puerto Rico 00969.

b.   A beach apartment at Urb. Las Palmas Doradas, 90 Candelero Rd., Apt. A403, Humacao, Puerto Rico 00791.

c.   A beach apartment at Urb. Cond. Sol y Playa, 800 Carr. 429, Apt. 313, Rincon, Puerto Rico 00677.

d.   An apartment at 920 Spring Park Street, Apt. 201, Kissimmee, Florida 34747.

e.   A house at 1011 Periwinkle Ct., Kissimmee, Florida 34747.

   B.   Affiliates and Insiders

4.   The following relationships existed from in or about December 2022 to the present:

a.   [1] WR Pierluisi and [10] MA González-Coya were married to each other, co-administered the Conjugal Partnership, and were the parents of defendants [11] WS Pierluisi, [12] MB Pierluisi and [13] PA Pierluisi.

b.   [11] WS Pierluisi owned and represented the following corporations: [4] Pier, [5] PRG, and [6] HGX.

c.   [11] WS Pierluisi represented defendant [3] Atardeceres and co-owned it with his sisters [12] MB Pierluisi and [13] PA Pierluisi.

d.   CEO Loubriel was a business associate and friend of defendant [1] WR Pierluisi and his family and served as a contracted employee of [2] AMAC.

e.   [2] AMAC's by-laws established at Clause Nine, that "[e]very director and every officer of this corporation (and every director or officer who at the request of the corporation has served as a director or officer of another corporation in which the corporation has an interest) whether or not then holding office, shall be indemnified by the Corporation for the costs and expenses reasonably incurred or that he has

been forced to incur by reason of any action, suit or proceeding in which he is involved or is included as part of his status as director or officer of the corporation or of such other corporation, *except when in the action, suit or proceeding he is found guilty of negligence or improper conduct in the performance of his duties as a director or officer*." Emphasis added.

## IV.    CRIMINAL INVESTIGATION AND FRAUDULENT TRANSACTIONS

### A.    Criminal Investigation and Prosecution

1. In or about October 2022, the Federal Bureau of Investigation ("FBI") executed a search warrant for [1] WR Pierluisi's mobile phones and [2] AMAC's business premises.

2. Upon execution of the search warrant, defendants [1] WR Pierluisi and [2] AMAC became aware of an ongoing criminal investigation that exposed them to financial liability to the United States.

3. On December 19, 2022, two months after the FBI executed search warrants, defendants [1] WR Pierluisi and [10] MA González-Coya created defendant [9] WMP Trust Fund for the benefit of their son, [11] WS Pierluisi, and their two daughters, [12] MB Pierluisi and [13] PA Pierluisi, as Primary Beneficiaries, and the descendants of their children as Secondary Beneficiaries.

4. [11] WS Pierluisi was named the Fiduciary of [9] WMP Trust Fund in the deed of trust.

5. During the months of February, March, and April 2023, defendants [1] WR Pierluisi and [2] AMAC negotiated with the United States Attorney's Office for the District of Puerto Rico the language and terms of an Information and Plea Agreements that were filed on April 14, 2023, at docket entries 4, 5, and 7 in the Criminal Case.

6. On April 14, 2023, defendants [1] WR Pierluisi and [2] AMAC pled guilty, along with other codefendants and pursuant to Information and Plea Agreements filed in the Criminal Case,

to violations of Title 18, U.S.C., § 666 for obtaining by fraud and converting for their own use and the use of others an amount of more than $3,712,000 that was property stolen from Housing and Urban Development ("HUD") federal assistance programs for the management and operation of Public Housing Projects (PHPs) in Puerto Rico.

7. The Plea Agreement executed by [1] WR Pierluisi and filed on April 13, 2023, at docket entry number 5, provided that [1] WR Pierluisi agreed to the entry of an order of restitution against him and in favor of the United States in the amount of $2,035,498.86, joint and severable with defendant [2] AMAC.

8. The Plea Agreement executed by [2] AMAC and filed on April 13, 2023, at docket entry number 7, provided that [2] AMAC agreed to the entry of an order of restitution against it and in favor of the United States in the amount of $3,712,000, joint and severable with the other codefendants in the criminal proceeding.

9. On April 14, 2023, the San Juan Daily Star published an article in Puerto Rico detailing the admissions in the Plea Agreements and notifying the public that the defendants had agreed to pay $3.7 million dollars in illegally procured funds to the United States.

10. On July 11, 2023, [1] WR Pierluisi was sentenced to a term of imprisonment of forty-three months and ordered to pay a special monetary assessment of $100 and restitution to HUD in the amount of $2,035,498.86 jointly and severally with defendant [2] AMAC consistent with the terms of his Plea Agreement. See Judgment in the Criminal Case, docket entry 80.

11. [1] WR Pierluisi's restitution debt of $2,035,498.86 was due immediately upon entry of the Judgment on July 11, 2023. See Judgment at docket entry 80 in the Criminal Case.

12. On July 11, 2023, [2] AMAC was sentenced to a term of probation of three years and ordered to pay a special monetary assessment of $400 and restitution to HUD in the amount of

$3,712,000, jointly and severally with the codefendants in the Criminal Case consistent with the terms of its Plea Agreement. See Judgment in the Criminal Case, docket entry 81.

13.  [2] AMAC's restitution debt of $2,035,498.86 was due immediately upon entry of the Judgment on July 11, 2023. See Judgment at docket entry 81 in the Criminal Case.

14.  [1] WR Pierluisi was knowledgeable of [2] AMAC's debt to the United States.

15.  [1] WR Pierluisi signed [2] AMAC's Plea Agreement on behalf of the corporation.

16.  [2] AMAC was knowledgeable of [1] WR Pierluisi's debt to the United States because [1] WR Pierluisi was the corporation's CEO and President at the time that he signed his Plea Agreement.

17.  [3] Atardeceres, an affiliate and insider owned and controlled by [11] WS Pierluisi, [12] MB Pierluisi, and [13] PA Pierluisi, the children of [1] WR Pierluisi, knew or should have known of [2] AMAC's multi-million-dollar debt to the United States because the prosecution, guilty plea, and admission of debt by their father [1] WR Pierluisi and [2] AMAC were widely publicized in Puerto Rico in April 2023.

18.  [4] Pier, an affiliate and insider owned and controlled by [11] WS Pierluisi, the son of [1] WR Pierluisi, knew or should have known of defendant [2] AMAC's multi-million-dollar debt to the United States because the prosecution, guilty plea, and admission of debt by his father [1] WR Pierluisi and [2] AMAC were widely publicized in Puerto Rico in April 2023.

19.  [5] PRG, an affiliate and insider owned and controlled by [11] WS Pierluisi, the son of [1] WR Pierluisi, knew or should have known of defendant [2] AMAC's multi-million-dollar debt to the United States because the prosecution, guilty plea, and admission of debt by his father [1] WR Pierluisi and [2] AMAC were widely publicized in Puerto Rico in April 2023.

20.  [6] HGX, an affiliate and insider owned and controlled by [11] WS Pierluisi, the son of [1] WR Pierluisi, knew or should have known of defendant [2] AMAC's multi-million-dollar

debt to the United States because the prosecution, guilty plea, and admission of debt by his father [1] WR Pierluisi and [2] AMAC were widely publicized in Puerto Rico in April 2023.

21.  [7] Bosque Verde, an affiliate and insider wholly owned by CEO Loubriel, who is the CEO of defendant [2] AMAC and an insider as to [2] AMAC, knew or should have known of [2] AMAC's multi-million-dollar debt to the United States because the prosecution, guilty plea, and admission of debt by defendants [1] WR Pierluisi and [2] AMAC were widely publicized in Puerto Rico in April 2023.

22.  [8] Janus, an affiliate and insider wholly owned by CEO Loubriel, who is the CEO of defendant [2] AMAC and an insider as to [2] AMAC, knew or should have known of defendant [2] AMAC's multi-million-dollar debt to the United States because the prosecution, guilty plea, and admission of debt by defendants [1] WR Pierluisi and [2] AMAC were widely publicized in Puerto Rico on April 2023.

23.  [9] WMP Trust Fund, an affiliate and insider created by defendants [1] WR Pierluisi and [10] MA González-Coya, knew or should have known of defendants [1] WR Pierluisi's and [2] AMAC's multi-million-dollar debt to the United States because the prosecution, guilty plea, and admission of debt by defendants [1] WR Pierluisi and [2] AMAC were widely publicized in Puerto Rico in April 2023.

24.  [10] MA González-Coya knew or should have known of defendants [1] WR Pierluisi's and [2] AMAC's multi-million-dollar debt to the United States because the prosecution, guilty plea, and admission of debt by her husband [1] WR Pierluisi and [2] AMAC were widely publicized in Puerto Rico in April 2023. [10] MA González-Coya was knowledgeable of [1] WR Pierluisi's debt to the United States because she was married to him when he signed his Plea Agreement. [10] MA González-Coya was knowledgeable of [2] AMAC's debt to the

United States because she was [2] AMAC's Vice President when her husband, [1] WR Pierluisi, signed the Plea Agreement on behalf of [2] AMAC.

25.   [11] WS Pierluisi knew or should have known of defendants [1] WR Pierluisi's and [2] AMAC's multi-million-dollar debt to the United States because the prosecution, guilty plea, and admission of debt by his father [1] WR Pierluisi and [2] AMAC were widely publicized in Puerto Rico in April 2023.

26.   [12] MB Pierluisi knew or should have known of defendants [1] WR Pierluisi's multi-million-dollar debt to the United States because the prosecution, guilty plea, and admission of debt by her father [1] WR Pierluisi and [2] AMAC were widely publicized in Puerto Rico in April 2023.

27.   [13] PA Pierluisi knew or should have known of defendants [1] WR Pierluisi's multi-million-dollar debt to the United States because the prosecution, guilty plea, and admission of debt by her father [1] WR Pierluisi and [2] AMAC were widely publicized in Puerto Rico.

28.   [14] Banco Popular, as a financial institution providing banking services to [1] WR Pierluisi and [2] AMAC, knew or should have known of defendants [1] WR Pierluisi's and [2] AMAC's multi-million-dollar debt to the United States because the prosecution, guilty plea, and admission of debt by defendants [1] WR Pierluisi and [2] AMAC were widely publicized in Puerto Rico in April 2023.

   B.   Scheme to Render Debtors Insolvent

        1.   *Donations of March 3, 2023*

29.   On March 3, 2023, defendants [1] WR Pierluisi and [10] MA González-Coya donated the following three real estate properties (the "Conjugal Properties") to defendant [9] WMP Trust Fund:

a. Their main residence at Urb. Parque de Bucaré, 1 Calle Bromelia, Guaynabo, Puerto Rico 00969, valued at $400,000 according to public deeds,

b. A beach apartment at Urb. Las Palmas Doradas, 90 Candelero Rd., Apt. A403, Humacao, Puerto Rico 00791, valued at $590,000 according to public deeds, and

c. A second beach apartment at Urb. Cond. Sol y Playa, 800 Carr. 429, Apt. 313, Rincon, Puerto Rico 00677, valued at $250,000 according to public deeds.

30. [10] MA González-Coya's approval and signature was required to execute the donation through public deed, free of charge, of the Conjugal Properties to [9] WMP Trust Fund.

31. At the time of the donation, the three real estate properties were encumbered by mortgage loans with defendant [14] Banco Popular, to wit:

a. Urb. Parque de Bucaré, 1 Calle Bromelia, Guaynabo, Puerto Rico 00969: a first mortgage for $51,391.18, and a second mortgage for $434,100.75;

b. Urb. Las Palmas Doradas, 90 Candelero Rd., Apt. A403, Humacao, Puerto Rico 00791: a first mortgage for $520,000 and a second mortgage for $568,907.70; and

c. Urb. Cond. Sol y Playa, 800 Carr. 429, Apt. 313, Rincon, Puerto Rico 00677: a first mortgage for $314,400 and a second mortgage for $298,982.41.

2. *Two deposits of more than $3.8 Million in Employment Retention Tax Credits into [2] AMAC's bank account*

32. On April 26, 2023, a check dated April 18, 2023, and issued by the United States Department of Treasury ("Treasury") in the amount of $2,037,387.65 for Employment Retention Tax Credits was deposited into [2] AMAC's Regions Bank operational account with number ending in 5368 ("Regions Bank Account 5368").

33. The Employment Retention Tax Credits refund deposited into [2] AMAC's Regions Bank Account on April 26, 2023, was not subject to any previously issued valid encumbrances.

34. On April 28, 2023, a check dated April 18, 2023, and issued by Treasury in the amount of $1,789,705.13 for Employment Retention Tax Credits was deposited into [2] AMAC's Regions Bank Account 5368.

35. The Employment Retention Tax Credits refund deposited into [2] AMAC's Regions Bank Account on April 28, 2023, was not subject to any previously issued valid encumbrances.

### 3. $2.9 Million Unsecured Loan of Corporate Funds from [2] AMAC to [1] WR Pierluisi

36. On that same day, April 28, 2023, defendant [2] AMAC, represented by its President, defendant [1] WR Pierluisi, and its Vice President, defendant [10] MA González-Coya, loaned its CEO at the time, defendant [1] WR Pierluisi, the amount of $2,946,271.18, with interest, and a term of repayment of 6 years.

37. [1] WR Pierluisi did not provide [2] AMAC reasonably equivalent value in exchange for the transfer, nor did he provide any warranties or liens over real property, nor any other secured source of payment to guarantee repayment of [2] AMAC's corporate funds.

38. On April 28, 2023, defendant [1] WR Pierluisi received and deposited $2,946,271.18 into his bank account, which amounts were then readily available to satisfy the $2,035,498.86 restitution obligation assumed and admitted to by [1] WR Pierluisi in the Plea Agreement filed at docket entry number 5 in the Criminal Case on April 13, 2023.

39. The funds loaned by [2] AMAC to [1] WR Pierluisi and deposited on April 28, 2023, into his account were not subject to any previously issued valid encumbrances.

40. The disbursement of the funds loaned by [2] AMAC to [1] WR Pierluisi benefitted the Conjugal Partnership.

       4.   *Satisfaction of Half a Million Dollars in Mortgages to Benefit*
           *[11] WMP Trust Fund*

41.  On May 1, 2023, defendant [1] WR Pierluisi issued check number 112 from [2] AMAC's Regions Bank Account 5368 in the amount of $467,843.93 to the order of [14] Banco Popular to pay off a mortgage encumbering the beach apartment located at Urb. Las Palmas Doradas, 90 Candelero Rd., Apt. A403, Humacao, Puerto Rico 00791.

42.  The beach apartment located at Urb. Las Palmas Doradas, 90 Candelero Rd., Apt. A403, Humacao, Puerto Rico 00791 had been donated by defendants [1] WR Pierluisi and [10] MA González-Coya to defendant [9] WMP Trust Fund on March 3, 2023.

43.  Defendant [2] AMAC did not receive any reasonably equivalent value from defendants [1] WR Pierluisi or [9] WMP Trust Fund in exchange for the disbursement of the $467,843.93 from its Regions Bank Account 5368 to satisfy a mortgage over a real estate asset owned by [9] WMP Trust Fund.

44.  The release of [1] WR Pierluisi's personal guarantee to satisfy the mortgage that encumbered the beach apartment located at Urb. Las Palmas Doradas, 90 Candelero Rd., Apt. A403, Humacao, Puerto Rico 00791 by [14] Banco Popular was without value because defendant [1] WR Pierluisi was insolvent at the time.

45.  By failing to provide [2] AMAC a reasonably equivalent value in exchange for the transfers made on May 1, 2023, to satisfy the mortgage that had been encumbering the beach apartment located at Urb. Las Palmas Doradas, 90 Candelero Rd., Apt. A403, Humacao, Puerto Rico 00791, defendant [14] Banco Popular failed to take the transferred funds in good faith.

46.  The cancellation of the mortgage that encumbered the beach apartment located at Urb. Las Palmas Doradas, 90 Candelero Rd., Apt. A403, Humacao, Puerto Rico 00791 by [14] Banco Popular, which was filed at the Registry of Property on June 30, 2023, did not benefit

defendants [1] WR Pierluisi or [2] AMAC because the owner of the property was [11] WMP Trust Fund.

47.  Defendant [9] WMP Trust Fund did not grant defendant [2] AMAC a mortgage, deed of trust or security agreement over any of its assets in exchange for the $467,843.93 disbursement.

48.  Defendant [1] WR Pierluisi did not grant defendant [2] AMAC a mortgage, deed of trust or security agreement over any of its assets in exchange for the $467,843.93 disbursement.

49.  Defendant [9] WMP Trust Fund is an insider as to defendant [2] AMAC because defendants [1] WR Pierluisi and [10] MA González-Coya, persons in control of [2] AMAC, are the founders of the [9] WMP Trust Fund.

50.  Defendant [1] WR Pierluisi is an insider as to defendant [2] AMAC because defendant [1] WR Pierluisi is a person in control of [2] AMAC and, therefore, an insider as to [2] AMAC.

51.  Defendant [9] WMP Trust Fund is an insider as to defendant [1] WR Pierluisi because he was the founder of the [9] WMP Trust Fund.

52.  On May 10, 2023, defendant [1] WR Pierluisi purchased 921 Begonia Road, Apt. 102, Kissimmee, Florida 34747.

### 5. *Deposit of more than $3 Million in Employment Retention Tax Credits into [2] AMAC's bank account*

53.  On May 15, 2023, a check dated April 18, 2023, and issued by Treasury in the amount of $3,015,660.66 for Employment Retention Tax Credits was deposited into [2] AMAC's Regions Bank Account 5368.

54.  The Employment Retention Tax Credits refund deposited into [2] AMAC's Regions Bank Account on May 15, 2023, was not subject any previously issued valid encumbrances.

55.  Between April 26 and May 15, 2023, defendant [2] AMAC received and deposited $6,842,753.44 into its Regions Bank Account 5368, which amounts were then readily available

to satisfy the $3,712,000 restitution obligation assumed and admitted to by [2] AMAC in the Plea Agreement filed at docket entry number 7 in the Criminal Case on April 13, 2023.

### 6. $2.2 Million in Unsecured Loans from [2] AMAC to Insiders on May 23, 2023

56. On May 23, 2023, [2] AMAC, represented by its President defendant [1] WR Pierluisi, loaned and transferred $2,125,000 to the following co-defendants, who were insiders of [2] AMAC, without receiving a reasonably equivalent value in exchange for the transfer nor procuring warranties or liens over real or personal property, nor any other secured source of repayment, from the borrowers to guarantee the repayment of the corporate funds disbursed:

| Loan recipient | Amount | Funds deposited/ Person receiving funds | Term loan |
|---|---|---|---|
| [3] Atardeceres | $800,000 | [11] WS Pierluisi | Interest and repayment in 6 years |
| [6] HGX | $750,000 | [11] WS Pierluisi | Interest and repayment in 6 years |
| [7] Bosque Verde | $150,000 | CEO Loubriel | Interest and repayment in 3 years |
| [8] Janus | $185,000 | CEO Loubriel | Interest and repayment in 3 years |
| [9] WMP Trust Fund | $240,000 | [11] WS Pierluisi, beneficiary and fiduciary [12] MB Pierluisi, beneficiary [13] PA Pierluisi, beneficiary | Interest and repayment in 6 years |

57. [10] MA González-Coya, as Vice President of [2] AMAC, issued the certified corporate resolutions authorizing the fraudulent transfers completed by [2] AMAC on May 23, 2023.

58. Based on financial records and information provided by CEO Loubriel on behalf of [2] AMAC on September 13, 2023, neither defendant [3] Atardeceres, nor defendants [6] HGX, [7] Bosque Verde, [8] Janus, and [9] WMP Trust Fund granted defendant [2] AMAC a mortgage,

deed of trust or security agreement over any of its assets in exchange for the disbursements made by [2] AMAC to them on May 23, 2023.

59.   Defendant [3] Atardeceres is an insider as to defendant [2] AMAC because the owners of [3] Atardeceres, [11] WS Pierluisi, [12] MA Pierluisi and [13] PA Pierluisi, are the children of defendants [1] WR Pierluisi and [10] MA González-Coya, persons in control of defendant [2] AMAC.

60.   Defendant [6] HGX is an insider as to defendant [2] AMAC because the owners of [3] Atardeceres: (a) [9] WMP Trust Fund is represented by WS Pierluisi as fiduciary, the son of defendants [1] WR Pierluisi and [10] MA González-Coya, persons in control of defendant [2] AMAC, and (b) CEO Loubriel is an officer and employee of the defendant [2] AMAC.

61.   Defendant [7] Bosque Verde is an insider as to defendant [2] AMAC because the owner of [7] Bosque Verde, CEO Loubriel, is an officer and contracted employee of the defendant [2] AMAC.

62.   Defendant [8] Janus is an insider as to defendant [2] AMAC because the owner of [8] Janus, CEO Loubriel, is an officer and contracted employee of the defendant [2] AMAC.

   *7.   $1.1 Million in Unsecured Loans from [2] AMAC to Insiders on June 29, 2023*

63.   On June 29, 2023, [2] AMAC, represented by its President defendant [1] WR Pierluisi, loaned and transferred $1,151,000 to the following co-defendants, who were insiders of [2] AMAC, without receiving a reasonably equivalent value in exchange for the transfer nor procuring warranties or liens over real or personal property, nor any other secured source of repayment, from the borrowers to guarantee the repayment of the corporate funds disbursed:

| Loan recipient | Amount | Funds deposited/ Person receiving funds | Term loan |
|---|---|---|---|
| [3] Atardeceres | $276,000 | [11] WS Pierluisi | Interest and repayment in 6 years |

| Loan recipient | Amount | Funds deposited/ Person receiving funds | Term loan |
|---|---|---|---|
| [5] PRG | $75,000 | [11] WS Pierluisi | Interest and repayment in 6 years |
| [9] WMP Trust Fund | $800,000 | [11] WS Pierluisi, beneficiary and fiduciary [12] MB Pierluisi, beneficiary PA Pieruisi beneficiary | Interest and repayment in 6 years |

64. Based on financial records and information provided by CEO Loubriel on behalf of [2] AMAC on September 13, 2023, neither defendant [3] Atardeceres, nor defendants [5] PRG, and [9] WMP Trust Fund, granted defendant [2] AMAC a mortgage, deed of trust or security agreement over any of its assets in exchange for the disbursements made by [2] AMAC to them on June 29, 2023.

65. Defendants [3] Atardeceres, [5] PRG, and [9] WMP Trust Fund  are insiders as to defendant [2] AMAC because the owner of [5] PRG, and [3] Atardeceres WS Pierluisi, is the son, a relative, of defendants [1] WR Pierluisi and [10] MA González-Coya, persons in control of defendant [2] AMAC, and because [11] WS Pierluisi is the Trustee and a beneficiary of [9] WMP Trust Fund.

### 8. $2.1 Million in Satisfaction of Mortgages from [14] Banco Popular for Properties Owned by [11] WMP Trust Fund

66. On June 30, 2023, defendants [1] WR Pierluisi and his wife [10] MA González-Coya paid off the following mortgages encumbering the Conjugal Properties they donated to [9] WMP Trust Fund, who was an insider as of defendants [1] WR Pierluisi and his wife [10] MA González-Coya, by paying $2,136,390.86 to [14] Banco Popular without receiving a reasonably equivalent value in exchange for the transfers, nor procuring warranties or liens over

real or personal property, nor any other secured source of repayment of the transferred funds from [9] WMP Trust Fund:

    a.    satisfied a mortgage encumbering Urb. Parque de Bucaré, 1 Calle Bromelia, Guaynabo, Puerto Rico 00969 through the payment of $434,100.75 to defendant [14] Banco Popular (See Entry 2023-082148-SJ03 and Mortgage Cancellation Deed);

    b.    satisfied two mortgages encumbering Urb. Las Palmas Doradas, 90 Candelero Rd., Apt. A403, Humacao, Puerto Rico 00791, through the payment of $520,000 and $568,907.70, respectively, to defendant [14] Banco Popular (See Entry 2023-082155-HU01 and Mortgage Cancellation Deed); and

    c.    satisfied two mortgages encumbering Urb. Cond. Sol y Playa, 800 Carr. 429, Apt. 313, Rincon, Puerto Rico 00677, through the payment of $314,400 and $298,982.41, respectively, to defendant [14] Banco Popular (See Entry 2023-082880-AG01 and Mortgage Cancellation Deed).

67. The cancellation of the five mortgages benefitted defendant [9] WMP Trust Fund exclusively because [11] WMP Trust Fund was the owner of the Conjugal Properties at the time of satisfaction of these mortgages.

68. [9] WMP Trust Fund did not provide defendants [1] WR Pierluisi or [10] MA González-Coya reasonably equivalent value in exchange for the transfers made on June 30, 2023, to satisfy the five mortgages that had been encumbering the Conjugal Properties.

69. Defendant [14] Banco Popular knew or should have known that the $2,136,390.86 used to satisfy the five mortgages encumbering the Conjugal Properties were not funds belonging to defendant [9] WMP Trust Fund and as such, accepting a third party payment at the time of the pay off.

70. Defendant [14] Banco Popular knew or should have known the individuals providing the funds to satisfy the five mortgages encumbering the Conjugal Properties were [1] WR Pierluisi and [10] MA González-Coya.

71. The cancellation of the mortgages that encumbered the Conjugal Properties by [14] Banco Popular on June 30, 2023, did not benefit defendant [1] WR Pierluisi because the owner of the properties was [9] WMP Trust Fund.

72. Defendant [14] Banco Popular knew or should have known that by cancelling the mortgages encumbering the Conjugal Properties belonging to [9] WMP Trust Fund it was not providing [1] WR Pierluisi a reasonably equivalent value in exchange for the transfers made on June 30, 2023, to satisfy the five mortgages that had been encumbering the Conjugal Properties because that real estate belonged to [9] WMP Trust Fund.

73. The release of [1] WR Pierluisi's personal guarantees to satisfy the five mortgages that had been encumbering the Conjugal Properties by [14] Banco Popular on June 30, 2023, was a transaction without value because defendant [1] WR Pierluisi was insolvent at the time.

74. The release of [1] WR Pierluisi's personal guarantees to satisfy the five mortgages that had been encumbering the Conjugal Properties by [14] Banco Popular was not reasonably equivalent value in exchange for the transfers made on June 30, 2023.

75. By failing to provide [1] WR Pierluisi a reasonably equivalent value in exchange for the transfers of $2,136,390.86 made on June 30, 2023, to satisfy the five mortgages that had been encumbering the Conjugal Properties, defendant, [14] Banco Popular failed to take the transferred funds in good faith.

9. *Transfer of [1] WR Pierluisi's proprietary interest in Florida properties to his children, defendants [11] WS Pierluisi, [12] MB Pierluisi, and [13] PA Pierluisi and his wife [10] MA González-Coya*

76.  At some point between March and August 2023, defendants [1] WR Pierluisi and his wife [10] MA González-Coya transferred an 80% ownership of the 921 Begonia Road, Apt. 102, Kissimmee, Florida 34747 property to their daughter [13] PA Pierluisi and 10% to defendant [10] MA González-Coya, while defendant [1] WR Pierluisi retained a 10% interest in the property without having [1] WR Pierluisi receive a reasonably equivalent value in exchange for the transfer of his proprietary interest, nor procuring warranties or liens over real or personal property, nor any other secured source of repayment from [13] PA Pierluisi or any other transferees.

77. [13] PA Pierluisi and [10] MA Gonzalez-Coya knew or should have known of [1] WR Pierluisi's muti-million-dollar debt to the United States at the time that [1] WR Pierluisi transferred his proprietary interest over the 921 Begonia Road, Apt. 102, Kissimmee, Florida 34747 property to them.

78.  At some point between March and August 2023, defendants [1] WR Pierluisi and his wife [10] MA González-Coya transferred an 80% ownership of 1011 Periwinkle Ct., Kissimmee, Florida 34747 property to their daughter [12] MB Pierluisi and 10% to defendant [10] MA González-Coya, while defendant [1] WR Pierluisi retained a 10% interest in the property without having [1] WR Pierluisi receive a reasonably equivalent value in exchange for the transfer of his proprietary interest, nor procuring warranties or liens over real or personal property, nor any other secured source of repayment from [12] MB Pierluisi or any other transferees.

79. [12] MB Pierluisi and [10] MA Gonzalez-Coya knew or should have known of [1] WR Pierluisi's muti-million-dollar debt to the United States at the time that [1] WR Pierluisi transferred his proprietary interest over the 921 Begonia Rd., Apt. 102, Kissimmee, Florida 34747 property to them.

80.   At some point between March and August 2023, defendants [1] WR Pierluisi and his wife [10] MA González-Coya transferred an 80% ownership of 920 Spring Park Street, Apt. 201, Kissimmee, Florida 34747 to their son [11] WS Pierluisi and 10% to defendant [10] MA González-Coya, while defendant [1] WR Pierluisi retained a 10% interest in the property without having [1] WR Pierluisi receive a reasonably equivalent value in exchange for the transfer of his proprietary interest, nor procuring warranties or liens over real or personal property, nor any other secured source of repayment from [11] WS Pierluisi or any other transferees.

81.   [11] WS Pierluisi and [10] MA Gonzalez-Coya knew or should have known of [1] WR Pierluisi's muti-million-dollar debt to the United States at the time that [1] WR Pierluisi transferred his proprietary interest over the 921 Begonia Rd., Apt. 102, Kissimmee, Florida 34747 property to them.

82.   Defendant [1] WR Pierluisi was the CEO of [2] AMAC from about 1995 to July 31, 2023.

83.   On or about July 31, 2023, defendant [1] WR Pierluisi transferred the administration of his ownership shares in [2] AMAC to his wife, defendant [10] MA González-Coya.

84.   On or about August 1, 2023, defendant [10] MA González-Coya hired CEO Loubriel to act as CEO of [2] AMAC until July 31, 2026.

85.   Defendant [1] WR Pierluisi retained control of [2] AMAC and [2] AMAC's bank accounts despite transferring the title of CEO to CEO Loubriel and the administration of his ownership interest in [2] AMAC to defendant [10] MA González-Coya.

86.   Defendant [1] WR Pierluisi can unilaterally rescind the transfer of administration of his ownership interest over [2] AMAC at any moment.

87.   Defendant [1] WR Pierluisi can unilaterally rescind the appointment of CEO Loubriel as CEO of [2] AMAC at any moment.

-25-

88.  On July 19, 2023, Defendant [1] WR Pierluisi submitted a sworn financial statement in support of his claim of insolvency where he reported insufficient liquid funds to satisfy his debt to the United States.

*10.  $345,000 in Unsecured Loans from [2] AMAC to [11] WMP Trust Fund*

89.  On August 22, 2023, defendant [2] AMAC issued a check for $175,000 from [2] AMAC's Banco Popular Account ending in 1787 (the "Fund Check") payable to defendant [9] WMP Trust Fund, who was an insider of [2] AMAC, for an alleged loan as to which [2] AMAC received no reasonably equivalent value in exchange for the transfer nor procured warranties or liens over real or personal property, nor any other secured source of repayment, from [9] WMP Trust Fund to guarantee the repayment of the corporate funds disbursed.

90.  The Fund Check was signed and issued by defendant [1] WR Pierluisi on behalf of [2] AMAC.

91.  By issuing the Fund Check, [1] WR Pierluisi was exercising and demonstrating his dominion and control over [2] AMAC's assets.

92.  On August 29, 2023, [2] AMAC issued a check for $170,000 from Banco Popular Account ending 1787 (the "Second Fund Check") payable to the order of [9] WMP Trust Fund, who was an insider of [2] AMAC, for an alleged loan as to which [2] AMAC received no reasonably equivalent value in exchange for the transfer nor procured warranties or liens over real or personal property, nor any other secured source of repayment, from [9] WMP Trust Fund to guarantee the repayment of the corporate funds disbursed.

93.  The Second Fund Check was signed and issued by defendant [1] WR Pierluisi on behalf of [2] AMAC.

94.  By issuing the Second Fund Check, [1] WR Pierluisi was exercising and demonstrating his dominion and control over [2] AMAC's assets.

*11.  $40,000 in Unsecured Loans from [1] WR Pierluisi to [2] AMAC*

95.  On September 8, 2023, defendant [1] WR Pierluisi transferred $40,000 from his personal bank account at Banco Popular ending 8401 into [2] AMAC's Banco Popular Account ending in 1787.

96.  Defendant [1] WR Pierluisi did not receive reasonably equivalent value nor warranties or liens over real or personal property, nor any other secured source of repayment from [2] AMAC for the $40,000 transferred into its bank account.

*12.  $800,000 in Unsecured Loans from [2] AMAC to [4] Pier, an Insider*

97.  From in or about May 2023 to in or about October 2023, defendant [2] AMAC disbursed the amount of $800,000 to defendant [4] Pier, who was an insider of [2] AMAC, for an alleged loan as to which [2] AMAC received no reasonably equivalent value in exchange for the transfer nor procured warranties or liens over real or personal property, nor any other secured source of repayment, from [4] Pier to guarantee the repayment of the corporate funds disbursed.

98.  Defendant [4] Pier is an insider as to defendant [2] AMAC because the owner of [4] Pier, [11] WS Pierluisi, is the son, a relative, of defendant [1] WR Pierluisi, a person in control of defendant [2] AMAC.

99.  Since the order of restitution was issued in the Criminal Case, [1] WR Pierluisi has paid $50, and the restitution debt balance remains at $2,035,448.86 as of May 16, 2024.

100.  To date, [1] WR Pierluisi has neglected, failed, or refused to pay the full amount of the restitution he owes to the United States under the Criminal Case.

C.  Fraudulent Transfers Resulting in Insolvency of [1] WR Pierluisi

101.  From October 2022, after learning of the criminal investigation against him and defendant [2] AMAC, to the date of sentencing, July 11, 2023, defendant [1] WR Pierluisi:

a.  donated properties belonging to the Conjugal Partnership to [9] WMP Trust Fund valued at $1,240,000,

b.  paid off the mortgages of the properties owned by [9] WMP Trust Fund through the expenditure of $1,301,990.86, and

c.  transferred funds in the amount of approximately $57,344.70 to remodel two residential properties in Orlando Florida, repair a private vessel, and procure consultant services,

expending an aggregate amount of more than $3,561,917.40 in transactions that benefitted insiders without receiving a reasonably equivalent value in exchange for the transfers and knowing that he would become insolvent because of the transfers.

102.  On August 11, 2023, during the first debtor's interview for the enforcement of the restitution award at the U.S. Attorney's Office Financial Litigation Program ("FLP"), defendant [1] WR Pierluisi stated that he had no financial resources from which to pay the restitution imposed.

103.  Despite having previously indicated he was insolvent and incapable of paying his debt to the United States, on September 8, 2023, defendant [1] WR Pierluisi transferred $40,000 to an insider, defendant [2] AMAC, and divested himself of 90% of his ownership interest in the following real estate properties in favor of insiders: his children, and his wife:

a.  921 Begonia Rd., Apt. 102, Kissimmee, Florida 34747,

b.  1011 Periwinkle Ct., Kissimmee, Florida 34747, and

c.  920 Spring Park Street, Apt. 201, Kissimmee, Florida 34747,

without receiving a reasonably equivalent value in exchange for the transfers and knowing that he would become further insolvent because of the transfers.

104. The transfers made by [1] WR Pierluisi were characterized by the following indicia of fraud:

 a. The transfers made by [1] WR Pierluisi were to insiders;

 b. [1] WR Pierluisi retained possession or control of the properties he transferred;

 c. The transfers were made after [1] WR Pierluisi knew of his debt to the United States;

 d. The transfers made by [1] WR Pierluisi were of substantially all of his assets;

 e. The value of the consideration received by [1] WR Pierluisi was not reasonably equivalent to the value of the assets transferred;

 f. Many of the assets transferred by [1] WR Pierluisi were transferred in exchange for no consideration; and

 g. Some of the transfers made by [1] WR Pierluisi were to [14] Banco Popular, a lienor, who provided adequate consideration not to [1] WR Pierluisi in exchange for the funds, but to [9] WMP Trust Fund, an insider of [1] WR Pierluisi.

 D.  Fraudulent Transfers Resulting in Insolvency of [2] AMAC

105. Since April 28, 2023, after learning of the criminal investigation against it and pleading guilty in the Criminal Case, defendant [2] AMAC:

 a. Made 10 loans to insiders in the aggregate amount of $7,022,271.18,

 b. Paid $497,843.93 to satisfy and cancel a mortgage for an apartment in Humacao belonging to defendant [9] WMP Trust Fund, an insider, and

 c. Transferred $345,000 to defendant [9] WMP Trust Fund, an insider, via checks issued from Banco Popular Account ending 1787,

expending an aggregate amount of more than $7,865,115.11 without receiving a reasonably equivalent value in exchange for the transfers and knowing that it would become insolvent because of the transfers.

106.  On September 13, 2023, during the first debtor's meeting at the FLP with defendant [2] AMAC, [2] AMAC's CEO, CEO Loubriel, stated that [2] AMAC had no financial resources to pay the judgment imposed.

107.  The transfers made by [2] AMAC in the aggregate amount of more than $7,865,115.11 were of substantially all its assets and made the corporation insolvent.

108.  On September 13, 2023, CEO Loubriel provided to the FLP a financial statement of defendant [2] AMAC, loan agreements and promissory notes for funds transferred by [2] AMAC to various corporations and a family-owned trust who were insiders as to [2] AMAC and from whom [2] AMAC did not receive reasonably equivalent value in exchange for the transfers, nor procured warranties or liens over real or personal property, nor any other secured source of repayment of these corporate assets.

109.  [1] WR Pierluisi, personally and as representative of defendant [2] AMAC, and [2] AMAC fraudulently transferred funds after having a debt to the United States without receiving a reasonably equivalent value in exchange for the transfers, and pursuant to which fraudulent transfers defendants [1] WR Pierluisi and [2] AMAC rendered themselves insolvent and thus unable to pay the restitution imposed against them and in favor of the United States in the Criminal Case.

110.  The fraudulent transfers were made to insiders, granting unsecured loans and donations to favor defendant [1] WR Pierluisi's relatives and affiliates, thereby leaving [1] WR Pierluisi and [2] AMAC insolvent and incapable of paying the restitution judgment.

111. Defendants [3] Atardeceres, [4] Pier, [5] PRG, [6] HGX, [7] Bosque Verde, [8] Janus, [9] WMP Trust Fund, and [10] MA González-Coya, as co-administrator of the Conjugal Partnership, were insiders who had reasonable cause to believe that debtors [1] WR Pierluisi and [2] AMAC were to be rendered insolvent as a result of the execution of the transactions disbursing assets of the debtors without procuring reasonably equivalent value in exchange therefor.

112. Defendant [14] Banco Popular did not provide reasonably equivalent value to [1] WR Pierluisi or [2] AMAC for the transfers made in advanced satisfaction of the five mortgages encumbering the Conjugal Properties owned by [9] WMP Trust Fund and which were not overdue at the time of satisfaction and was therefore not a taker in good faith of those funds.

113. The transfers made by [2] AMAC were characterized by the following indicia of fraud:

    a.  The transfers made by [2] AMAC were to insiders;

    b.  [1] WR Pierluisi, and insider of [2] AMAC, retained possession or control of the properties transferred;

    c.  The transfers were made after [2] AMAC knew of its debt to the United States;

    d.  The transfers made by [2] AMAC were of substantially all of its liquid assets;

    e.  The value of the consideration received by [2] AMAC was not reasonably equivalent to the value of the assets transferred;

    f.  Many of the assets transferred by [2] AMAC were transferred in exchange for no consideration; and

    g.  One of the transfers made by [2] AMAC was to [14] Banco Popular, a lienor, who provided adequate consideration in exchange for the funds not to [2] AMAC but to [9] WMP Trust Fund, an insider of [1] WR Pierluisi who controlled [2] AMAC.

114.  Since the order of restitution was issued in the Criminal Case, [2] AMAC has paid $19,272. 47 and the restitution debt balance remains at $3,853,103.40 as of May 16, 2024. That payment was made pursuant to a Writ of Garnishment ordered by the Court.

115.  To date, [2] AMAC has neglected, failed, or refused to pay the full amount of the restitution it owes under the Criminal Case.

## V.    CAUSES OF ACTION

Count I – AMAC's Fraudulent Transfers After Incurring Debt to the United States

Avoidance of the transfers from [2] AMAC to:
[1] Walter R. Pierluisi-Isern,
[2] American Management and
Administration Corporation, a.k.a. AMAC,
[3] Atardeceres del Yunque Inc.,
[4] Pier Property Management Inc.,
[5] PRG Affordable Housing Development L.L.C.,
[6] HGX Dominicana SRL,
[7] Bosque Verde L.L.C.,
[8] Janus L.L.C.,
[9] WMP Trust Fund, and
[14] Banco Popular de Puerto Rico.

1.  Count I is brought pursuant to the FDCPA which states, in relevant part, that:

a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States which arises before the transfer is made … if:

(1)

(A) the debtor makes the transfer … without receiving a reasonably equivalent value in exchange for the transfer …; and

(B) the debtor is insolvent at that time or the debtor
becomes insolvent as a result of the transfer or
obligation ….

28 U.S.C. § 3304 (a)(1).

2.  The United States reasserts and incorporates herein by reference the allegations in
Sections I, II, III, and IV above.

3.  On April 14, 2023, defendant [2] AMAC signed a Plea Agreement agreeing to make
restitution to the United States in the amount of $3,712,000.

4.  On July 11, 2023, [2] AMAC's obligation to pay the restitution became due and
payable.

5.  From April 14, 2023 to October 2023, [2] AMAC granted loans and made
disbursements which constituted "transfers" of funds, as that term is defined in the FDCPA,
28 U.S.C. § 3301(6), to [1] WR Pierluisi, [3] Atardeceres, [4] Pier, [5] PRG, [6] HGX, [7] Bosque
Verde, [8] Janus, [9] WMP Trust Fund, and [14] Banco Popular all referred to, jointly, as the
"Transferees."

6.  The transfers made by [2] AMAC to the Transferees were made after [2] AMAC
became aware of and admitted its debt to the United States pursuant to the criminal conduct
admitted to by [2] AMAC in the Criminal Case. See 28 U.S.C. § 3301(7).

7.  The funds that AMAC transferred to the Transferees totaled $7,865,115.11
(the "Disbursed Funds").

8.  [2] AMAC transferred the Disbursed Funds to insiders related to its CEO, defendant
[1] WR Pierluisi, and to businesses owned by defendant [1] WR Pierluisi's relatives and his
business associate, CEO Loubriel.

-33-

9.  After pleading guilty and agreeing to make restitution to the United States, [2] AMAC transferred all its funds to the Transferees and mortgaged its assets without receiving reasonably equivalent value for the property transferred.

10.  The Transferees did not provide [2] AMAC reasonably equivalent value in exchange for the portion of the Disbursed Funds they received and did not take those assets in good faith.

11.  [2] AMAC and the Transferees, as insiders, were aware that the transfer of the Disbursed Funds to the Transferees without receipt of reasonable equivalent value by [2] AMAC in exchange therefor would make [2] AMAC insolvent.

12.  [2] AMAC became insolvent after and because of the transfers of all its funds to the Transferees.

13.  The United States is entitled to void [2] AMAC's transfer of all Disbursed Funds to the Transferees because those transactions were fraudulent transfers made with the intent to defraud the United States.

14.  The United States is entitled to the following remedies under law:

   a.  avoidance of the transfer of all Disbursed Funds under 28 U.S.C. § 3306 (a)(1),

   b.  judgment lien against the assets transferred to the Transferees under 28 U.S.C. §§ 3306 (a)(2) and 3201,

   c.  writ of garnishment against the assets transferred to the Transferees under 28 U.S.C. §§ 3306 (a)(2) and 3205, and

   d.  writ of execution against the assets transferred to the Transferees under 28 U.S.C. §§ 3306 (a)(2) and 3203.

<u>Count II – AMAC's Fraudulent Transfers Without Regard to Date of Judgment</u>

Avoidance of the transfers from [2] AMAC to:
[1] Walter R. Pierluisi-Isern,
[2] American Management and

Administration Corporation, a.k.a. AMAC,
[3] Atardeceres del Yunque Inc.,
[4] Pier Property Management Inc.,
[5] PRG Affordable Housing Development L.L.C.,
[6] HGX Dominicana SRL,
[7] Bosque Verde L.L.C.,
[8] Janus L.L.C.,
[9] WMP Trust Fund, and
[14] Banco Popular de Puerto Rico.

1.  Count II is brought pursuant to the FDCPA, 28 U.S.C. §§ 3304 (b)(1)(A), which states, in relevant part, that:

> a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation—
>
> (A) with actual intent to hinder, delay, or defraud a creditor.

2.  The United States reasserts and incorporates herein by reference the allegations in Sections I, II, III, and IV above.

3.  On April 14, 2023, defendant [2] AMAC signed a Plea Agreement agreeing to make restitution to the United States in the amount of $3,712,000.

4.  On July 11, 2023, [2] AMAC's obligation to pay the restitution became due and payable.

5.  From April 14, 2023, to October 2023, [2] AMAC granted loans and made disbursements which constituted "transfers" of funds, as that term is defined in the FDCPA, to the Transferees. See 28 U.S.C. § 3301 (6).

6.  The transfers made by [2] AMAC to the Transferees were made after [2] AMAC became aware of and admitted its debt to the United States pursuant to the criminal conduct admitted to by [2] AMAC in the Criminal Case.

7.  The Disbursed Funds totaled $7,865,115.11.

8.  [2] AMAC transferred the Disbursed Funds to insiders related to its CEO, defendant [1] WR Pierluisi, and to businesses owned by defendant [1] WR Pierluisi's relatives and his business associate, CEO Loubriel.

9.  After pleading guilty and agreeing to make restitution to the United States, [2] AMAC transferred all its funds to the Transferees and mortgaged its assets without receiving reasonably equivalent value for the property transferred.

10.  The Transferees did not provide [2] AMAC reasonably equivalent value in exchange for the portion of the Disbursed Funds they received and did not take those assets in good faith.

11.  [2] AMAC and the Transferees, as insiders, were aware that the transfer of all Disbursed Funds to the Transferees without receipt of reasonable equivalent value by [2] AMAC in exchange therefor would make [2] AMAC insolvent.

12.  [2] AMAC became insolvent and incapable to pay the restitution owed to the United States after and because of the transfers of all of its funds to the Transferees.

13.  [2] AMAC completed the transfer of the Disbursed Funds, constituting substantially all of its assets, to avoid paying the restitution owed to the United States.

14.  The United States is entitled to void [2] AMAC's transfer of all Disbursed Funds to the Transferees because those transactions were fraudulent transfers made with the intent to defraud the United States.

15.  The United States is entitled to the following remedies under law:

    a.  avoidance of the transfer of all Disbursed Funds under 28 U.S.C. § 3306 (a)(1),

    b.  judgment lien against the assets transferred to the Transferees under 28 U.S.C. §§ 3306 (a)(2) and 3201,

    c.  writ of garnishment against the assets transferred to the Transferees under 28 U.S.C. §§ 3306 (a)(2) and 3205, and

    d.   writ of execution against the assets transferred to the Transferees under 28 U.S.C.

§§ 3306 (a)(2) and 3203.

<u>Count III – [2] AMAC's Fraudulent Transfers Upon Insolvency</u>

Avoidance of the transfers from [2] AMAC to:
[1] Walter R. Pierluisi-Isern,
[2] American Management and
Administration Corporation, a.k.a. AMAC,
[3] Atardeceres del Yunque Inc.,
[4] Pier Property Management Inc.,
[5] PRG Affordable Housing Development L.L.C.,
[6] HGX Dominicana SRL,
[7] Bosque Verde L.L.C.,
[8] Janus L.L.C.,
[9] WMP Trust Fund, and
[14] Banco Popular de Puerto Rico.

1.   Count III is brought pursuant to the FDCPA, 28 U.S.C. §§ 3304 (b)(1)(B)(i), which

states, in relevant part, that:

> a transfer made or obligation incurred by a debtor is fraudulent as to
> a debt to the United States, whether such debt arises before or after
> the transfer is made or the obligation is incurred, if the debtor makes
> the transfer or incurs the obligation—
>
> …
>
> (B) without receiving a reasonably equivalent value in exchange
>     for the transfer or obligation if the debtor—
>
>    (i)     was engaged or was about to engage in a business or a
>            transaction for which the remaining assets of the debtor
>            were unreasonably small in relation to the business or
>            transaction.

2.   The United States reasserts and incorporates herein by reference the allegations in

Sections I, II, III, and IV above.

3.   On April 14, 2023, defendant [2] AMAC signed a Plea Agreement agreeing to make

restitution to the United States in the amount of $3,712,000.

4. On July 11, 2023, [2] AMAC's obligation to pay the restitution became due and payable.

5. From April 14, 2023, to October 2023, [2] AMAC granted loans and made disbursements which constituted "transfers" of funds, as that term is defined in the FDCPA, to the Transferees. See 28 U.S.C. § 3301(6).

6. The transfers made by [2] AMAC to the Transferees were made after [2] AMAC became aware of and admitted its debt to the United States pursuant to the criminal conduct admitted to by [2] AMAC in the Criminal Case.

7. The Disbursed Funds that AMAC transferred to the Transferees totaled $7,865,115.11.

8. [2] AMAC transferred the Disbursed Funds to insiders related to its CEO, defendant [1] WR Pierluisi, and to businesses owned by defendant [1] WR Pierluisi's relatives and his business associate, CEO Loubriel.

9. During the period after pleading guilty and agreeing to make restitution to the United States, [2] AMAC transferred all its funds to the Transferees and mortgaged its assets without receiving reasonably equivalent value for the property transferred.

10. The Transferees did not provide [2] AMAC reasonably equivalent value in exchange for the portion of the Disbursed Funds they received and did not take those assets in good faith.

11. [2] AMAC and the Transferees, as insiders, were aware that the transfer of all Disbursed Funds to the Transferees without receipt of reasonable equivalent value by [2] AMAC in exchange therefor would make [2] AMAC insolvent.

12. [2] AMAC became insolvent after and because of the transfers of all of its funds to the Transferees and incapable to pay the restitution owed to the United States.

13.  [2] AMAC completed the transfer of the Disbursed Funds, constituting substantially all of its assets, to avoid paying the restitution owed to the United States because its remaining assets were insufficient to maintain its business operations.

14.  [2] AMAC has been incapable of maintaining its business operations after transferring the Disbursed Funds.

15.  The United States is entitled to void [2] AMAC's transfer of all Disbursed Funds to the Transferees because those transactions were fraudulent transfers made with the intent to defraud the United States.

16.  The United States is entitled to the following remedies under law:

    a.  avoidance of the transfer of all Disbursed Funds under 28 U.S.C. § 3306 (a)(1),

    b.  judgment lien against the assets transferred to the Transferees under 28 U.S.C. §§ 3306 (a)(2) and 3201,

    c.  writ of garnishment against the assets transferred to the Transferees under 28 U.S.C. §§ 3306 (a)(2) and 3205, and

    d.  writ of execution against the assets transferred to the Transferees under 28 U.S.C. §§ 3306 (a)(2) and 3203.

<u>Count IV – [2] AMAC's Fraudulent Transfers to Defraud Creditors Under Puerto Rico Law</u>

Avoidance of the transfers from [2] AMAC to:
[1] Walter R. Pierluisi-Isern,
[2] American Management and
Administration Corporation, a.k.a. AMAC,
[3] Atardeceres del Yunque Inc.,
[4] Pier Property Management Inc.,
[5] PRG Affordable Housing Development L.L.C.,
[6] HGX Dominicana SRL,
[7] Bosque Verde L.L.C.,
[8] Janus L.L.C.,
[9] WMP Trust Fund, and
[14] Banco Popular de Puerto Rico.

1. Count IV is brought pursuant to Puerto Rico law, P.R. Laws Tit. 31, § 6231 (2020), which establishes that legal transactions carried out to defraud creditors are rescindable.

2. Section 6231 specifies that transactions completed with the intention of undermining the action of creditors, are presumed fraudulent "when carried out between relatives within the fourth degree of consanguinity or second degree of affinity, in gratuitous transactions and in onerous transactions if carried out after a judgment or a seizure order has been issued against the grantor". See, P.R. Laws Tit. 31, § 6231(d).

3. The United States reasserts and incorporates herein by reference the allegations in Sections I, II, III, and IV above.

4. On April 14, 2023, defendant [2] AMAC signed a Plea Agreement agreeing to make restitution to the United States in the amount of $3,712,000.

5. On July 11, 2023, [2] AMAC's obligation to pay the restitution became due and payable.

6. From April 14, 2023, to October 2023, [2] AMAC granted loans and made disbursements which constituted "transfers" of funds, as that term is defined in the FDCPA, to the "Transferees." See 28 U.S.C. § 3301(6).

7. The transfers made by [2] AMAC to the Transferees were made after [2] AMAC became aware of and admitted its debt to the United States pursuant to the criminal conduct admitted to by [2] AMAC in the Criminal Case.

8. The Disbursed Funds totaled $7,865,115.11.

9. During the period after pleading guilty and agreeing to make restitution to the United States, [2] AMAC transferred all its funds to the Transferees and mortgaged its assets without receiving reasonably equivalent value for the property transferred in what are deemed gratuitous transactions for lack of security to guarantee repayment of corporate assets.

10.  The Transferees did not provide [2] AMAC reasonably equivalent value in exchange for the portion of the Disbursed Funds they received and did not take those assets in good faith.

11.  [2] AMAC became insolvent after and as a result of the transfers of all of its funds to the Transferees and incapable to pay the restitution owed to the United States.

12.  [2] AMAC completed the transfer of the Disbursed Funds, constituting substantially all of its assets, to avoid paying the restitution owed to the United States.

13.  The United States is entitled to rescind [2] AMAC's transfer of all Disbursed Funds to the Transferees under P.R. Laws Tit. 31, § 6231, because those transactions were fraudulent transfers made with the intent to defraud the United States, a known creditor.

<u>Count V – [1] WR Pierluisi's Fraudulent Transfers After Incurring Debt to the United States</u>

Avoidance of the transfers from [1] WR Pierluisi to and for the benefit of:
[2] American Management and Administration Corporation, a.k.a. AMAC,
[9] Fideicomiso WMP (WMP Trust Fund),
[10] Marcia de los Angeles González Coya Fernández,
[11] Walter Simon Pierluisi González-Coya,
[12] Marcia Beatriz Pierluisi González-Coya,
[13] Patricia De Los Angeles Pierluisi González-Coya, and
[14] Banco Popular de Puerto Rico.

1.  Count V is brought pursuant to the FDCPA which states, in relevant part, that:

a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States which arises before the transfer is made … if:

(1)

(C) the debtor makes the transfer … without receiving a reasonably equivalent value in exchange for the transfer …; and

> (D) the debtor is insolvent at that time or the debtor
> becomes insolvent as a result of the transfer or
> obligation ….

28 U.S.C. § 3304 (a)(1).

2.  The United States reasserts and incorporates herein by reference the allegations in Sections I, II, III, and IV above.

3.  On April 14, 2023, defendant [1] WR Pierluisi signed a Plea Agreement agreeing to make restitution to the United States in the amount of $2,035,498.86.

4.  On July 11, 2023, [1] WR Pierluisi's obligation to pay the restitution became due and payable.

5.  From October 2022, after learning of the criminal investigation against him and defendant [2] AMAC, to the date of sentencing, July 11, 2023, defendant [1] WR Pierluisi:

    a.  Took out a loan from defendant [1] AMAC for $2,946,271.18 without guaranteeing a source of repayment,

    b.  donated properties belonging to the Conjugal Partnership to [9] WMP Trust Fund valued at $1,240,000,

    c.  paid off the mortgages of the Conjugal Properties owned by [9] WMP Trust Fund through the expenditure of $1,301,990.86,

    d.  transferred funds in the amount of approximately $57,344.70 to remodel two residential properties in Orlando Florida, repair a private vessel, and procure consultant services, and

    e.  transferred $40,000 to [2] AMAC from his Banco Popular account ending in 1787, thereby expending an aggregate amount of more than $3,561,917.40 (the "Pierluisi Transfers") without receiving reasonably equivalent value for any of these transfers.

-42-

6.  The Pierluisi Transfers constituted "transfers" of funds, as that term is defined in the FDCPA. See 28 U.S.C. § 3301(6).

7.  The Pierluisi Transfers were made after defendant [1] WR Pierluisi became aware of and admitted his debt to the United States pursuant to the criminal conduct admitted to by him in the Criminal Case.

8.  The Pierluisi Transfers totaled more than $3,561,917.40.

9.  [1] WR Pierluisi made the Pierluisi Transfers to insiders related to him, including defendant [9] WMP Trust Fund an entity created by him and his wife, and to his wife and children.

10.  After pleading guilty and agreeing to make restitution to the United States, [1] WR Pierluisi transferred almost all his funds and assets through the Pierluisi Transfers without receiving reasonably equivalent value for the property transferred from the transferees thereto.

11.  The transferees in the Pierluisi Transfers did not provide [1] WR Pierluisi reasonably equivalent value in exchange for the funds and assets they received and did not take those assets in good faith.

12.  [1] WR Pierluisi and the transferees of the Pierluisi Transfers, as insiders, were aware that the transfer of substantially all of [1] WR Pierluisi's funds and assets without receipt of reasonably equivalent value by [1] WR Pierluisi in exchange therefor would make [1] WR Pierluisi insolvent.

13.  [1] WR Pierluisi became insolvent after and as a result of the transfers of substantially all of his funds and assets through the Pierluisi Transfers.

14.  The United States is entitled to void the Pierluisi Transfers because those transactions were fraudulent transfers made with the intent to defraud the United States.

15.  The United States is entitled to the following remedies under law:

    a.  avoidance of the Pierluisi Transfers under 28 U.S.C. § 3306 (a)(1),

b. judgment lien against the assets transferred through the Pierluisi Transfers under 28 U.S.C. §§ 3306 (a)(2) and 3201,

c. writ of garnishment against the assets transferred through the Pierluisi Transfers under 28 U.S.C. §§ 3306 (a)(2) and 3205, and

d. writ of execution against the assets transferred through the Pierluisi Transfers under 28 U.S.C. §§ 3306 (a)(2) and 3203.

Count VI – [1] WR Pierluisi's Fraudulent Transfers Without Regard to Date of Judgment

Avoidance of the transfers from [1] WR Pierluisi to and for the benefit of:
[2] American Management and Administration Corporation, a.k.a. AMAC,
[9] Fideicomiso WMP (WMP Trust Fund),
[10] Marcia de los Angeles González Coya Fernández,
[11] Walter Simon Pierluisi González-Coya,
[12] Marcia Beatriz Pierluisi González-Coya,
[13] Patricia De Los Angeles Pierluisi González-Coya, and
[14] Banco Popular de Puerto Rico.

1. Count VI is brought pursuant to the FDCPA, 28 U.S.C. §§ 3304 (b)(1)(A), which states, in relevant part, that:

a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation—

(A) with actual intent to hinder, delay, or defraud a creditor.

2. The United States reasserts and incorporates herein by reference the allegations in Sections I, II, III, and IV above.

3. On April 14, 2023, defendant [1] WR Pierluisi signed a Plea Agreement agreeing to make restitution to the United States in the amount of $2,035,498.86.

4. On July 11, 2023, [1] WR Pierluisi's obligation to pay the restitution became due and payable.

5. From October 2022, after learning of the criminal investigation against him and defendant [2] AMAC, to September 2023, defendant [1] WR Pierluisi executed the Pierluisi Transfers and expended an aggregate amount of more than $3,561,917.40.

6. The Pierluisi Transfers constituted "transfers" of funds, as that term is defined in the FDCPA. See 28 U.S.C. § 3301(6).

7. The Pierluisi Transfers were made after defendant [1] WR Pierluisi became aware of and admitted his debt to the United States pursuant to the criminal conduct admitted to by him in the Criminal Case.

8. [1] WR Pierluisi made the Pierluisi Transfers to insiders related to him, including defendant [9] WMP Trust Fund an entity created by him and his wife, and to his wife and children.

9. After pleading guilty and agreeing to make restitution to the United States, [1] WR Pierluisi transferred almost all his funds and assets through the Pierluisi Transfers without receiving reasonably equivalent value for the property transferred from the transferees thereto.

10. The transferees in the Pierluisi Transfers did not provide [1] WR Pierluisi reasonably equivalent value in exchange for the funds and assets they received and did not take those assets in good faith.

11. [1] WR Pierluisi and the transferees of the Pierluisi Transfers, as insiders, were aware that the transfer of substantially all [1] WR Pierluisi's funds and assets without receipt of reasonably equivalent value by [1] WR Pierluisi in exchange therefor would make [1] WR Pierluisi insolvent.

12. [1] WR Pierluisi became insolvent after and as a result of the Pierluisi Transfers and incapable to pay the restitution owed to the United States.

13. [1] WR Pierluisi completed the Pierluisi Transfers, constituting substantially all of his assets, to avoid paying the restitution owed to the United States.

14.   The United States is entitled to void the Pierluisi Transfers because those transactions were fraudulent transfers made with the intent to defraud the United States.

15.   The United States is entitled to the following remedies under law regarding the Pierluisi Transfers:

    a.   avoidance of the Pierluisi Transfers under 28 U.S.C. § 3306 (a)(1),

    b.   judgment lien against the assets transferred through the Pierluisi Transfers under 28 U.S.C. §§ 3306 (a)(2) and 3201,

    c.   writ of garnishment against the assets transferred through the Pierluisi Transfers under 28 U.S.C. §§ 3306 (a)(2) and 3205, and

    d.   writ of execution against the assets transferred through the Pierluisi Transfers under 28 U.S.C. §§ 3306 (a)(2) and 3203.

<u>Count VII – [1] WR Pierluisi's Fraudulent Transfers Upon Insolvency</u>

Avoidance of the transfers from [1] WR Pierluisi to and for the benefit of:
[2] American Management and Administration Corporation, a.k.a. AMAC,
[9] Fideicomiso WMP (WMP Trust Fund),
[10] Marcia de los Angeles González Coya Fernández,
[11] Walter Simon Pierluisi González-Coya,
[12] Marcia Beatriz Pierluisi González-Coya,
[13] Patricia De Los Angeles Pierluisi González-Coya, and
[14] Banco Popular de Puerto Rico.

1.   Count VII is brought pursuant to the FDCPA, 28 U.S.C. §§ 3304 (b)(1)(B)(i), which states, in relevant part, that:

(1) … a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation—

…

(B) without receiving a reasonably equivalent value in exchange for the transfer or obligation if the debtor—

(i)  was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

2.  The United States reasserts and incorporates herein by reference the allegations in Sections I, II, III, and IV above.

3.  On April 14, 2023, defendant [1] WR Pierluisi signed a Plea Agreement agreeing to make restitution to the United States in the amount of $2,035,498.86.

4.  On July 11, 2023, [1] WR Pierluisi's obligation to pay the restitution became due and payable.

5.  From October 2022, after learning of the criminal investigation against him and defendant [2] AMAC, to September 2023, defendant [1] WR Pierluisi executed the Pierluisi Transfers and expended an aggregate amount of more than $3,561,917.40.

6.  The Pierluisi Transfers constituted "transfers" of funds, as that term is defined in the FDCPA. See 28 U.S.C. § 3301(6).

7.  The Pierluisi Transfers were made after defendant [1] WR Pierluisi became aware of and admitted his debt to the United States pursuant to the criminal conduct admitted to by him in the Criminal Case.

8.  [1] WR Pierluisi made the Pierluisi Transfers with and to insiders related to him, including defendants [1] AMAC, [9] WMP Trust Fund, an entity created by him and his wife, [10] MA González-Coya.

9.  After pleading guilty and agreeing to make restitution to the United States, [1] WR Pierluisi transferred almost all his funds and assets through the Pierluisi Transfers without receiving reasonably equivalent value for the property transferred from the transferees thereto.

10.  The transferees in the Pierluisi Transfers did not provide [1] WR Pierluisi reasonably equivalent value in exchange for the funds and assets they received and did not take those assets in good faith.

11.  [1] WR Pierluisi and the transferees of the Pierluisi Transfers, as insiders, were aware that the transfer of substantially all [1] WR Pierluisi's funds and assets without receipt of reasonably equivalent value by [1] WR Pierluisi in exchange therefor would make [1] WR Pierluisi insolvent.

12.  [1] WR Pierluisi became insolvent after and because of the Pierluisi Transfers and incapable to pay the restitution owed to the United States.

13.  [1] WR Pierluisi completed the Pierluisi Transfers, constituting substantially all his assets, to avoid paying the restitution owed to the United States.

14.  The United States is entitled to void the Pierluisi Transfers because those transactions were fraudulent transfers made with the intent to defraud the United States.

15.  The United States is entitled to the following remedies under law regarding the Pierluisi Transfers:

    a.  avoidance of the Pierluisi Transfers under 28 U.S.C. § 3306 (a)(1),

    b.  judgment lien against the assets transferred through the Pierluisi Transfers under 28 U.S.C. §§ 3306 (a)(2) and 3201,

    c.  writ of garnishment against the assets transferred through the Pierluisi Transfers under 28 U.S.C. §§ 3306 (a)(2) and 3205, and

    d.  writ of execution against the assets transferred through the Pierluisi Transfers under 28 U.S.C. §§ 3306 (a)(2) and 3203.

Count VIII – [1] WR Pierluisi's Fraudulent Transfers to Defraud Creditors Under Puerto Rico Law

Avoidance of the transfers from [1] WR Pierluisi to and for the benefit of:
[2] American Management and Administration Corporation, a.k.a. AMAC,
[9] Fideicomiso WMP (WMP Trust Fund),
[10] Marcia de los Angeles González Coya Fernández,
[11] Walter Simon Pierluisi González-Coya,
[12] Marcia Beatriz Pierluisi González-Coya,
[13] Patricia De Los Angeles Pierluisi González-Coya, and
[14] Banco Popular de Puerto Rico.

1. Count VIII is brought pursuant to Puerto Rico law, P.R. Laws Tit. 31, § 6231 (2020), which establishes that legal transactions carried out to defraud creditors are rescindable.

2. The United States reasserts and incorporates herein by reference the allegations in Sections I, II, III, and IV above.

3. Section 6231 specifies that transactions completed with the intention of undermining the action of creditors, are presumed fraudulent "when carried out between relatives within the fourth degree of consanguinity or second degree of affinity, in gratuitous transactions and in onerous transactions if carried out after a judgment or a seizure order has been issued against the grantor". See, P.R. Laws Tit. 31, § 6231r(d).

4. On April 14, 2023, defendant [1] WR Pierluisi signed a Plea Agreement agreeing to make restitution to the United States.

5. On July 11, 2023, [1] WR Pierluisi' s obligation to pay the restitution became due and payable.

6. From October 2022 through October 2023, [1] WR Pierluisi took out loans and made disbursements which constituted "transfers" of funds, as that term is defined in the FDCPA, from [2] AMAC and to [9] WMP Trust Fund, [10] MA González-Coya, and other third parties previously identified as the Pierluisi Transfers.

7.  The Pierluisi Transfers constituted "transfers" of funds, as that term is defined in the FDCPA. See 28 U.S.C. § 3301(6).

8.  The Pierluisi Transfers were made after [1] WR Pierluisi became aware of his debt to the United States pursuant to the criminal conduct admitted to by him in the Criminal Case.

9.  After pleading guilty and agreeing to make restitution to the United States, [1] WR Pierluisi transferred substantially all his funds and mortgaged his assets without receiving reasonably equivalent value for the property transferred in what are deemed gratuitous transactions for lack of security to guarantee repayment of assets.

10.  The transferees in the Pierluisi Transfers did not provide [1] WR Pierluisi reasonably equivalent value in exchange for the funds they received and did not take those assets in good faith.

11.  [1] WR Pierluisi became insolvent after and because of the transfers of all of its funds through the Pierluisi Transfers and incapable to pay the restitution owed to the United States.

12.  [1] WR Pierluisi completed the Pierluisi Transfers, divesting himself of substantially all of his assets, to avoid paying the restitution owed to the United States.

13.  The United States is entitled to rescind the Pierluisi Transfers under P.R. Laws Tit. 31, § 6231, because those transactions were fraudulent transfers made with the intent to defraud the United States, a known creditor.

Count IX – Joinder regarding [2] AMAC Disbursed Funds

Joinder of [1] Walter R. Pierluisi-Isern,
[3] Atardeceres del Yunque Inc.,
[4] Pier Property Management Inc.,
[5] PRG Affordable Housing Development L.L.C.,
[6] HGX Dominicana SRL,
[7] Bosque Verde L.L.C.,
[8] Janus L.L.C.,

-50-

[9] Fideicomiso WMP (WMP Trust Fund),
[10] Marcia de los Angeles González Coya Fernández,
[11] Walter S. Pierluisi González-Coya,
[12] Marcia Beatriz. Pierluisi González-Coya,
[13] Patricia de los Angeles Pierluisi González-Coya, and
[14] Banco Popular de Puerto Rico.

1.  The United States reasserts and incorporates herein by reference the allegations in Sections I, II, III, and IV above.

2.  [1] WR Pierluisi, [3] Atardeceres, [4] Pier, [5] PRG, [6] HGX, [7] Bosque Verde, [8] Janus, [9] WMP Trust Fund, and [10] MA González-Coya, as co-administrator of the Conjugal Partnership, [11] WS Pierluisi, [12] MB Pierluisi, [13] PA Pierluisi, and [14] Banco Popular are joined as defendants in the causes of action in Counts I,II, III and IV, because the remedies and relief that may be sought in this case—*i.e.*, (a) avoidance of the transfer of all Disbursed Funds under 28 U.S.C. § 3306(a)(1), (b) judgment lien against the assets transferred to the Transferees under 28 U.S.C. §§ 3306 (a)(2) and 3201, (c) writ of garnishment against the assets transferred to the Transferees under 28 U.S.C. §§ 3306(a)(2) and 3205, and (d) writ of execution against the assets transferred to the Transferees under 28 U.S.C. §§ 3306(a)(2) and 3203, are asserted as to assets owned or as to which the named defendants may claim an interest or arise out of the transactions or occurrences in which the joined defendants may seek to protect an interest, respectively, as per Title 28, U.S.C. § 3306(a)(2) and (3).

Count X – Joinder regarding the Fraudulent Pierluisi Transfers

Joinder of [9] WMP Trust,
[10] María de los Ángeles González-Coya,
[11] Walter S. Pierluisi González-Coya,
[12] Marcia Beatriz. Pierluisi González-Coya,
[13] Patricia de los Ángeles Pierluisi González-Coya, and
[14] Banco Popular de Puerto Rico.

1. The United States reasserts and incorporates herein by reference the allegations in Sections I, II, III, and IV above.

2. [9] WMP Trust Fund, [10] MA González-Coya, as co-administrator of the Conjugal Partnership, and [14] Banco Popular are joined as defendants in the causes of action in Counts V, VI, VII and VIII, because the remedies and relief that may be sought in this case—*i.e.*, (a) avoidance of the transfer of all Disbursed Funds under 28 U.S.C. § 3306 (a)(1), (b) judgment lien against the assets transferred to the Transferees under 28 U.S.C. §§ 3306 (a)(2) and 3201, (c) writ of garnishment against the assets transferred to the Transferees under 28 U.S.C. §§ 3306 (a)(2) and 3205, and (d) writ of execution against the assets transferred to the Transferees under 28 U.S.C. §§ 3306 (a)(2) and 3203, are asserted as to assets owned or as to which these joined defendants may claim an interest or arise out of the transactions or occurrences in which the defendants may sought to protect an interest, respectively, as per Title 28, U.S.C. § 3306(a)(2) and (3).

## VI.    PRAYER FOR RELIEF

WHEREFORE, the United States prays that this Complaint be deemed good and sufficient and that after due proceedings are had, that this Court enter judgment in its favor for a declaration of nullity and voidance of the following transactions:

| No. | Transaction | Value | Date | Transferee |
|---|---|---|---|---|
| 1. | Donation of Urb. Parque de Bucaré, 1 Calle Bromelia, Guaynabo, Puerto Rico 00969 by [1] WR Pierluisi | $400,000 | March 3, 2023 | [9] WMP Trust Fund |
| 2. | Donation of Urb. Las Palmas Doradas, 90 Candelero Rd., Apt. A403, Humacao, Puerto Rico 00791 by [1] WR Pierluisi | $590,000 | March 3, 2023 | [9] WMP Trust Fund |
| 3. | Donation of Urb. Cond. Sol y Playa, 800 Carr. 429, Apt. 313, Rincon, Puerto Rico 00677 by [1] WR Pierluisi | $250,000 | March 3, 2023 | [9] WMP Trust Fund |
| 4. | Unsecured loan from [2] AMAC to [1] WR Pierluisi | $2,946,271.18 | April 28, 2023 | [1] WR Pierluisi |
| 5. | Satisfaction of mortgage over Urb. Las Palmas Doradas, 90 Candelero Rd., Apt. A403, Humacao, Puerto Rico 00791 with [2] AMAC's funds | $467,843.93 | May 1, 2023 | [9] WMP Trust Fund [14] Banco Popular |
| 6. | Unsecured loan from [2] AMAC | $800,000 | May 23, 2023 | [3] Atardeceres |
| 7. | Unsecured loan from [2] AMAC | $750,000 | May 23, 2023 | [6] HGX |
| 8. | Unsecured loan from [2] AMAC | $150,000 | May 23, 2023 | [7] Bosque Verde |
| 9. | Unsecured loan from [2] AMAC | $185,000 | May 23, 2023 | [8] Janus |
| 10. | Unsecured loan from [2] AMAC | $240,000 | May 23, 2023 | [9] WMP Trust Fund |

| No. | Transaction | Value | Date | Transferee |
|-----|-------------|-------|------|------------|
| 11. | Unsecured loan from [2] AMAC | $276,000 | June 29, 2023 | [3] Atardeceres |
| 12. | Unsecured loan from [2] AMAC | $75,000 | June 29, 2023 | [5] PRG |
| 13. | Unsecured loan from [2] AMAC | $800,00 | June 29, 2023 | [9] WMP Trust Fund |
| 14. | Satisfaction of mortgage over Urb. Parque de Bucaré, 1 Calle Bromelia, Guaynabo, Puerto Rico 00969 with [1] WR Pierluisi's funds | $434,100.75 | June 30, 2023 | [9] WMP Trust Fund [14] Banco Popular |
| 15. | Satisfaction of mortgage over Urb. Las Palmas Doradas, 90 Candelero Rd., Apt. A403, Humacao, Puerto Rico 00791 with [1] WR Pierluisi's funds | $520,000 | June 30, 2023 | [9] WMP Trust Fund [14] Banco Popular |
| 16. | Satisfaction of mortgage over Urb. Las Palmas Doradas, 90 Candelero Rd., Apt. A403, Humacao, Puerto Rico 00791 with [1] Pierluisi's funds | $568,907.70 | June 30, 2023 | [9] WMP Trust Fund [14] Banco Popular |
| 17. | Satisfaction of mortgage over Urb. Cond. Sol y Playa, 800 Carr. 429, Apt. 313, Rincon, Puerto Rico 00677 with [1] Pierluisi's funds | $314,400 | June 30, 2023 | [9] WMP Trust Fund [14] Banco Popular |
| 18. | Satisfaction of mortgage over Urb. Cond. Sol y Playa, 800 Carr. 429, Apt. 313, Rincon, Puerto Rico 00677 with [1] Pierluisi's funds | $298,982.41 | June 30, 2023 | [9] WMP Trust Fund [14] Banco Popular |

| No. | Transaction | Value | Date | Transferee |
|-----|-------------|-------|------|------------|
| 19. | Transfer of [1] Pierluisi's proprietary interest in 921 Begonia Road, Apt. 102, Kissimmee, Florida 34747 | $350,000 | August 2023 | [13] PA Pierluisi [10] MA González-Coya |
| 20. | Transfer of [1] Pierluisi's proprietary interest in 1011 Periwinkle Ct., Kissimmee, Florida 34747 | $285,500 | August 2023 | [12] MB Pierluisi [10] MA González-Coya |
| 21. | Transfer of [1] Pierluisi's proprietary interest in 920 Spring Park Street, Apt. 201, Kissimmee, Florida 34747 | $430,000 | August 2023 | [11] WS Pierluisi [10] MA González-Coya |
| 22. | Unsecured loan from [2] AMAC | $175,000 | August 22, 2023 | [9] WMP Trust Fund |
| 23. | Unsecured loan from [2] AMAC | $170,000 | August 29, 2023 | [9] WMP Trust Fund |
| 24. | Transfer of funds from [1] WR Pierluisi to [2] AMAC | $40,000 | September 8, 2023 | [2] AMAC |
| 25. | Unsecured loan from [2] AMAC | $800,000 | May 2023 | [4] Pier |

Furthermore, the United States also respectfully requests the Honorable Court for the issuance of the following money judgments against the following individuals:

1.    $2,025,498.86 against [1] WR Pierluisi, and

2.    $3,712,000 against [4] AMAC.

The United States also claims for an award of costs of these proceedings; and for any other relief as the Court deems just and reasonable, and as the circumstances may require.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that service of process will be executed as per Rule 12 of the Federal Rules of Civil Procedure, via USPS Certified Mail, and email addresses available as to all defendants herein.

**RESPECTFULLY SUBMITTED**,

In San Juan, Puerto Rico, on July 25th, 2024.

W. Stephen Muldrow
United States Attorney
350 Chardon St. 1201
Torre Chardón Building
Hato Rey, Puerto Rico 00918
Fax: (787) 771-4050

*S/Dennise N. Longo Quiñones*
Dennise N. Longo Quiñones
Assistant United States Attorney
Chief, Financial Litigation Program
USDC PR No. 211408
Tel. 787-282-1928
dennise.longo.quinones@usdoj.gov

*S/M González*
Maritza González-Rivera
Assistant U.S. Attorney
USDC PR No. 208801
Tel. (787) 766-5656
maritza.gonzalez@usdoj.gov