## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff, | CIVIL: |
| v. | 24-1334 (CVR) |
| [1] WALTER R. PIERLUISI-ISERN,<br>[2] AMERICAN MANAGEMENT AND<br>ADMINISTRATION CORPORATION,<br>A.K.A. AMAC,<br>[3] ATARDECERES DEL YUNQUE INC.,<br>[4] PIER PROPERTY MANAGEMENT INC.,<br>[5] PRG AFFORDABLE HOUSING<br>DEVELOPMENT L.L.C.,<br>[6] HGX DOMINICANA SRL,<br>[7] BOSQUE VERDE L.L.C.,<br>[8] JANUS L.L.C.,<br>[9] FIDEICOMISO WMP (WMP TRUST<br>FUND),<br>[10]MARCIA DE LOS ANGELES<br>GONZÁLEZ-COYA FERNÁNDEZ<br>[11] WALTER SIMON PIERLUISI<br>GONZALEZ-COYA<br>[12] MARCIA BEATRIZ PIERLUISI<br>GONZALEZ-COYA<br>[13] PATRICIA DE LOS ANGELES<br>PIERLUISI GONZALEZ-COYA,<br>[14] BANCO POPULAR DE PUERTO RICO<br>Defendants. | FRAUDULENT TRANSFER<br>COMPLAINT<br>Title 28 U.S.C. § 3304<br>18 U.S.C. § 3664(m)(l)(A)(ii) |

## UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION
## TO BANCO POPULAR DE PUERTO RICO'S MOTION TO DISMISS
## <u>FOR FAILURE TO STATE A CLAIM (ECF #68)</u>

**TO THE HONORABLE COURT:**

**COMES NOW**, the United States of America, by and through the undersigned attorneys

and respectfully states and prays:

Table of Contents

I.      PROCEDURAL HISTORY..................................................................... 1

II.     MOTION TO DISMISS STANDARD................................................... 1

III.    FEDERAL DEBT COLLECTION PROCEDURES ACT ..................... 3

IV.     RESCISSION OF FRAUDULENT TRANSFERS UNDER PUERTO RICO
        LAW ................................................................................................... 5

V.      THE ALLEGATIONS OF THE COMPLAINT ARE NOT CONCLUSORY ...... 6

VI.     THE COMPLAINT ALLEGES SUFFICIENT FACTS TO CHALLENGE
        [14] BANCO POPULAR'S STANDING AS A GOOD FAITH
        TRANSFEREE .................................................................................. 12

VII.    THE COMPLAINT ALLEGES FACTS SUFFICIENT TO ESTABLISH A
        VIOLATION OF THE PROVISIONS OF PUERTO RICO LAW
        REGARDING RESCISSION OF FRAUDULENT CONVEYANCES. ............. 16

VIII.   BANCO POPULAR'S ALLEGATIONS IN SUPPORT OF THE
        MOTION TO DISMISS ................................................................... 18

        A.    The payments to [14] Banco Popular in satisfaction of loans secured
              by mortgages over the Conjugal Properties with funds originating from
              [2] AMAC are not preferences conferred to a secured creditor because
              [2] AMAC is not a debtor of [14] Banco Popular under those loans. ...... 18

        B.    [14] Banco Popular, a secured creditor with a valid claim pursuant to
              loan encumbering the Conjugal Properties, is not immune from
              avoidance of fraudulent conveyances transferring assets of [2] AMAC
              not encumbered by a valid lien. .................................................................. 22

        C.    Payments to satisfy the loans secured by mortgages encumbering the
              Conjugal Properties did not provide fair value because they benefitted
              a third party, not [2] AMAC, the debtor making the transfer. .................. 23

        D.    Any portion of a debtor's property that is unencumbered by mortgage,
              the equity owned by the mortgagee, is subject to claim by a creditor,
              including actions under the FDCPA. ......................................................... 25

        E.    The United States may seek collection of an order of restitution issued
              in criminal proceedings through any legal means, including any causes
              of action available under Puerto Rico law. ............................................... 26

        F.    [14] Banco Popular's relationship to [2] AMAC and [1] WR Pierluisi
              was that of a financial institution with a long-standing relationship,
              [14 Banco Popular was not merely an unrelated lender to a borrower. ..... 27

IX.     CONCLUSION ................................................................................. 28

## I.    PROCEDURAL HISTORY

On July 25, 2024, the United States filed a complaint seeking avoidance of multiple transactions made to defraud creditors by [1] Walter R. Pierluisi-Isern ("[1] WR Pierluisi") and [2] American Management and Administration Corporation ("[2] AMAC") under applicable provisions of the Federal Debt Collection Procedures Act, Title 18 U.S.C. § 3301, et seq. ("FDCPA") and Puerto Rico law (the "Complaint"). ECF #1. [14] Banco Popular de Puerto Rico ("[14] Banco Popular") was listed as a defendant in the case because it "may claim an interest in properties or transactions as to which plaintiff is seeking a remedy." Complaint, ECF #1 Section II(B) ¶ 14, p. 8.

On October 21, 2024, [14] Banco Popular filed a Motion to Dismiss for Failure to State a Claim under Fed. R. Civ. P. 12(b)(6) (the "Motion to Dismiss"). ECF #68. This court granted Plaintiff's request for extensions of time to respond setting the deadline for November 25, 2024.

The United States respectfully submits that the Complaint details factual circumstances and provides a legal basis sufficient to survive [14] Banco Popular's argument in the Motion to Dismiss.

## II.    MOTION TO DISMISS STANDARD

The standard to succeed on a motion to dismiss is a high one. *See* Federal Rule of Civil Procedure 12(b)(6). By itself, a motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards*, *Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The pleading requirement is that the "[f]actual allegations … be enough to raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986)); and *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). A plaintiff's factual allegations are "sufficient … [if they] 'raise a right

to relief above the speculative level.'" *Maldonado-Concepcion v. Puerto Rico*, 683 F. Supp. 2d 174, 76 (D.P.R. 2010) (quoting *Twombly*, 550 U.S. at 555).

When considering a motion to dismiss under Rule 12(b)(6), the federal court must accept as true all factual allegations in the complaint which "should [also] be construed favorably to the pleader." Fed. R. Civ. P. 12(b)(6); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). "The task of a court is then 'to review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *United States v. Arthur*, 2011 U.S. Dist. LEXIS 105611, *5-6 (citing *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) and *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (noting "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible").

In this context, determining the existence of plausibility is a "'context-specific' job that compels [judges] 'to draw on' [their] 'judicial experience and common sense.'" *Wadsworth v. Maine School Administrative District 40/Regional School Unit 40*, 2:19-cv-00577-JAW, 2020 WL 6370725, at *8 (D.Me. October 29, 2020) (citing Schatz, 669 F.3d at 55). In exercising this duty, the district court may consider "matters fairly incorporated within it and matters susceptible to judicial notice." *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003); *see also* Fed. R. Evid. 201(c).

Accordingly, when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for its allegations or prove his claim to the satisfaction of the factfinder. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp.*, 550 U.S. at 563 (citing *Sanjuan v. American Bd. of Psychiatry and*

2

*Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (once a claim for relief has been stated, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint")).

## III.    FEDERAL DEBT COLLECTION PROCEDURES ACT

The FDCPA is very similar to the Uniform Fraudulent Transfer Act (UFTA), which has been adopted in most states, and to parts of the federal bankruptcy code. Cf. 28 U.S.C.S. § 3304 and 11 U.S.C.S. § 548. Consequently, courts have found interpretations of the UFTA and the federal bankruptcy code to inform the meaning of the FDCPA.

28 U.S.C.S. § 3307 of the FDCPA allows the United States to obtain a judgment against a transferee who has received fraudulently transferred property. Section 3304 of the statute states in pertinent part:

(a) **Debt Arising Before Transfer.**

Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States which arises before the transfer is made or the obligation is incurred if—

(1)

(A) the debtor makes the transfer or incurs the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and

(B) the debtor is insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation ….

(b) **Transfers Without Regard to Date of Judgment.**

(1) Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation—

(A) with actual intent to hinder, delay, or defraud a creditor; or

3

> (B) without receiving a reasonably equivalent value in exchange for the transfer or obligation if the debtor—
>
> (i)     was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

Pursuant to these statutory provisions, "a transfer made by a debtor is fraudulent as to a debt to the United States arising before the transfer is made, if the transfer is made without fair and adequate consideration given in exchange, and if the debtor is, or as a result of the transfer becomes, insolvent" (28 U.S.C. § 3304(a)(1), (*see United States v. Maryans*, 1994 U.S. Dist. LEXIS 6072, \*9), and "the government may [also] prove that the transfer was fraudulent in one of two ways: first, by demonstrating 'actual intent' or second, by showing constructive intent to defraud, where an insolvent debtor makes a transfer 'without receiving a reasonably equivalent value in exchange.'" *Id.* § 3304(b)(1)(A), (B). *United States v. Osborne*, 807 Fed. Appx. 511, 519 (6th Cir. 2020).

The FDCPA defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." 28 U.S.C. § 3301(6). An "asset" is defined, in turn, as "property of a debtor." *Id.* § 3301(2).

Under the FDCPA, "[t]ransfers made to benefit third parties are clearly not made for value." *In re Health Gourmet, Inc.*, 29 B.R. 673, 677 (Bank. Ct. Ma. 1983) (citing L. King, *Collier on Bankruptcy*, Section 548.09 at 548-103(15th Ed. Supp. 1982) (court found that because the debtor did not benefit from the transfer, the transfer was not made for reasonable equivalent value).

Also under the FDCPA, the transferee's knowledge of the debtor's insolvency prohibits a finding that he is a good faith transferee. *Id.*, 29 B.R. at 677. Furthermore, "[t]he party who seeks to establish that he is a good faith transferee has the burden of demonstrating that he is entitled to

4

this status." *Id.* Courts have also acknowledged an actual intent to defraud creditors where an individual debtor transfers unencumbered corporate assets to satisfy a debt owed by the individual debtor where the transferee had no right to seek payment from the corporation. *Id.*, 29 B.R. at 676. The existence of such an intent is a question of fact not subject to motion to dismiss. *Id.*

Courts have also affirmed avoidance of a transfer on the ground that the transferee knew or should have known that it was part of a single transaction from which the debtor received no benefit. "It is well established that multilateral transactions may under appropriate circumstances be 'collapsed' and treated as phases of a single transaction for analysis" under fraudulent conveyance laws. *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 634 (2nd Cir. 1995). For avoidance of each transfer, however, the transferee affected must have actual or constructive knowledge of the entire scheme that renders the exchange fraudulent. *Id.* "Thus, an appropriate creditor may void or disregard a fraudulent conveyance *to any person* "except a purchaser for fair consideration *without knowledge of the fraud at the time of the purchase*." *Id.*, 48 F.3d at 635 (emphasis added). Knowledge of the fraud may be constructive and will "attributed to transferees who were aware of circumstances that should have led them to inquire further into the circumstances of the transaction, but who failed to make such inquiry". *Id.1*

## IV.    RESCISSION OF FRAUDULENT TRANSFERS UNDER PUERTO RICO LAW

The FDCPA is not to be construed to limit the United States' rights under any other federal law or state law with respect to collection of to any fine, penalty, assessment, restitution, or

---

1 This is precisely what is alleged in the Complaint. [14] Banco Popular is obliged under the Bank Secrecy Act ("BSA") to know its clients. The BSA is sometimes referred to as an "anti-money laundering" (AML) law or jointly as "BSA/AML," and is codified at 12 U.S.C. 1829b, 12 U.S.C. 1951-1960, 31 U.S.C. 5311-5314, 5316-5336. Plaintiff expressly alleges that [14] Banco Popular, a financial entity with a longstanding relationship with [2] AMAC and [1] WR Pierluisi, had a duty to know its clients and upon becoming aware of their guilty plea and acknowledgment of a multi-million-dollar debt to the United States in April 2023, had actual knowledge of their potential insolvency and the fraudulent nature of the transactions being challenged in the Complaint.

forfeiture arising in a criminal case. 28 U.S.C. § 3003(b)(2). Accordingly, the United States may collect any debt owed pursuant to a criminal proceeding under Puerto Rico law.

P.R. Laws Tit. 31, § 6231 (2020), establishes that legal transactions carried out to defraud creditors are rescindable. Section 6231 also provides that a legal transaction is presumed to be made to defraud creditors when:

(a) It is dated after the credit of the injured creditor, or is made to prevent the consequences of a malicious act,

(b) It consists of excluding an asset from the debtor's assets, or preventing its incorporation, even if they are expected rights or mere powers, or granting new guarantees to previous credits,

(c) It produces or aggravates the insolvency of the debtor, or

(d) It is granted with the intention of undermining the action of creditors, which is presumed in transactions carried out between relatives within the fourth degree of consanguinity or second degree of affinity, in gratuitous transactions and in onerous transactions if it is carried out after a sentence or a writ of attachment has been issued against the grantor.

## V.    THE ALLEGATIONS OF THE COMPLAINT ARE NOT CONCLUSORY

The Complaint fully complies with the pleading standard of Fed. R. Civ. P. 8(a) and 9(b). It establishes plaintiff's right to relief beyond a hypothetical level and alleges fraudulent conduct and knowledge of fraud with specificity. Even though a complaint need not contain detailed factual allegations to meet the pleading standard (*Bell Atl. Corp.*, 550 U.S. at 555), the fifty-six-page Complaint contains detailed allegations that duly satisfy the standard and properly alleges [14] Banco Popular's lack of standing as a "good faith transferee."

6

The Complaint is comprised of much more than "mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action". *See Bell Atl. Corp.*, 550 U.S. at 555, citing *Papasan*, 478 U.S. at 286 (1986)). The Complaint asserts eight causes of action. Counts I, II, III, V, VI and VII allege fraudulent transfers under different provisions of Section 3304 of the FDCPA. ECF #1, pp. 32-39 and 41-48. Counts IV and VIII allege fraudulent transfers in violation of Puerto Rico law. *Id.*, pp. 39-41 and 49-50. [14] Banco Popular is joined as a defendant in all counts because the remedies sought in the case are asserted as to assets in which it may claim an interest. *Id.*, pp. 50-52.

The Complaint describes in factual detail and legal substance, how defendant [14] Banco Popular knowingly entered in financial transactions that impaired the United States' restitution collection enforcement actions in violation of the FDCPA. The Complaint alleges that "[14] Banco Popular provided banking services to [1] WR Pierluisi and [2] AMAC and maintained a business relationship that required [14] Banco Popular to know them as customers, inquire about their ownership interests, and inquire about the nature and purpose of their relationships with [14] Banco Popular." *See* Complaint, ECF #1, Section II(B) ¶ 14, p. 8.

The Complaint also alleges that [1] WR Pierluisi and [2] AMAC were debtors to the United States as a result of a judgments issued against them on July 11, 2023, pursuant to plea agreements executed by each of them on April 14, 2023 where they admitted violations of Title 18, U.S.C. § 666 for obtaining federal funds by fraud and converting for their own use and the use of others. *Id.*, Section IV(A), pages 11-12. The Complaint further alleges that on "April 14, 2023, the San Juan Daily Star published an article in Puerto Rico detailing the admissions in the Plea Agreements and notifying the public that the defendants had agreed to pay $3.7 million dollars in illegally procured funds to the United States." *Id.*, Section IV(A) ¶ 9, p. 11. Therefore,

the Complaint alleges that "[14] Banco Popular, as a financial institution providing banking services to [1] WR Pierluisi and [2] AMAC, knew or should have known of defendants [1] WR Pierluisi's and [2] AMAC's multi-million-dollar debt to the United States because the prosecution, guilty plea, and admission of debt by defendants [1] WR Pierluisi and [2] AMAC were widely publicized in Puerto Rico in April 2023." *Id.*, Section IV(A) ¶ 28, p. 14.

The Complaint further alleges that on March 3, 2023, prior to entering into his plea agreement with the United States in Crim. Case No. 23-148 (CVR), defendant [1] WR Pierluisi and his wife, defendant [10] Marcia de los Angeles Gonzalez-Coya Fernandez ("[10] MA Gonzalez-Coya"), transferred their proprietary interest in three real estate properties (the "Conjugal Properties")[2] to defendant [9] Fideicomiso WMP ("[9] WMP Trust Fund"), a trust fund they created and registered under the laws of the Commonwealth of Puerto Rico on December 19, 2022, to hide assets from the United States, after they became aware of the investigation into [1] WR Pierluisi's and [2] AMAC's wrongdoing that was commenced in October 2022. *See, Id.*, Section IV(A), ¶¶ 1-3, p. 10, Section IV(B)(1), ¶¶ 29-30, pp. 14-15. The Complaint also alleges that the Conjugal Properties were encumbered by mortgages owned by [14] Banco Popular in which the original debtors were [1] WR Pierluisi and [10] MA González-Coya. *Id.*, Section IV(B)(1), ¶ 31, p. 15.

---

2 The Conjugal Properties as described in the Complaint at page 15, are: (a) Defendants [1] WR Pierluisi's and [10] MA González-Coya's main residence at Urb. Parque de Bucare, 1 Calle Bromelia, Guaynabo, Puerto Rico 00969, valued at $400,000 according to public deeds; (b) beach apartment at Urb. Las Palmas Doradas, 90 Candelero Rd., Apt. A403, Humacao, Puerto Rico 00791, valued at $590,000 according to public deeds, and (c) second beach apartment at Urb. Cond. Sol y Playa, 800 Carr. 429, Apt. 313, Rincon, Puerto Rico 00677, valued at $250,000 according to public deeds.

The Complaint further alleges that from April 26 through 28, 2023, [2] AMAC received more than $3.8 million in Employment Retention Tax Credits that were deposited into the corporation's Regions Bank account and used to give [1] WR Pierluisi an unsecured loan of $2.9 million on April 28, 2023. *Id.*, Section IV(B)(2)-(3), ¶ ¶ 32-40, pp. 15-16. The Complaint also alleges that the $3.8 million received by [2] AMAC and deposited in its Regions Bank account ending in 5368 were not subject to any previously issued valid liens or encumbrances. *Id.*, Section IV(B)(2)-(3), ¶ ¶ 33 and 35, pp. 15-16.

The Complaint alleges that on May 1, 2023, [1] WR Pierluisi issued a check from [2] AMAC's Regions Bank Account in the amount of $467,843.93 payable to [14] Banco Popular in satisfaction of the mortgage encumbering one of the Conjugal Properties owned by the [9] WMP Trust Fund: Urb. Las Palmas Doradas, Apt. A403, Humacao, Puerto Rico 00791 and encumbered by the loan ending in xx5631, even though [2] AMAC was not a debtor or guarantor of the mortgage being paid with [2] AMAC's funds. *Id.*, Section IV(B)(4), ¶ ¶ 41-46, pp. 17-18.

The Complaint also alleges that [1] WR Pierluisi and [10] MA González-Coya used funds from the $2.9 million unsecured loan procured on April 28, 2023, from [2] AMAC to satisfy the mortgages encumbering the Conjugal Properties owned at the time by [11] WMP Trust Fund which were cancelled through deeds of mortgage issued on June 30, 2023. *Id.*, Section IV(B)(8), ¶ ¶ 66-75, pp. 21-23. The Complaint further alleges that these transactions rendered both [2] AMAC and [1] WR Pierluisi insolvent and were plagued with indicia of fraud. *Id.*, Section IV(C), ¶¶ 101-115, pp. 27-32.

The transactions that plaintiff seeks to avoid, in which unencumbered funds belonging to [2] AMAC and deposited in Regions Bank account ending in xxx5638 were fraudulently transferred to [14] Banco Popular in contemporaneous transactions to satisfy debts owed by

[1] WR Pierluisi and [10] MA González-Coya, directly or through straw transactions in which [1] WR Pierluisi intervened, are the six transactions listed in the Complaint's prayer for relief and identified as Transactions:

      **number 5** (Value of $467,843.93),

      **number 14** (Value of $434,100.75),

      **number 15** (Value of $520,000.00),

      **number 16** (Value of $568,907.70),

      **number 17** (Value of $314,400.00), and

      **number 18** (Value of $298,982.41). *Id.*, Section VI, pp. 53-54.

The Complaint also alleges that "[14] Banco Popular did not provide reasonably equivalent value to [2] AMAC or [1] WR Pierluisi for the transfers made in advanced satisfaction of the five mortgages encumbering the Conjugal Properties owned by [9] WMP Trust Fund and which were not overdue at the time of satisfaction and was therefore not a taker in good faith of those funds." *Id.*, Section VI(D), ¶ 112 p. 31. The Complaint further alleges that the transactions of May 1 and June 30, 2023, satisfying in full the loans guaranteed by mortgages held by [14] Banco Popular were characterized by the following indicia or badges of fraud: the "transfers made by [1] WR Pierluisi were to [14] Banco Popular, a lienor, who provided adequate consideration not to [1] WR Pierluisi in exchange for the funds, but to [9] WMP Trust Fund, an insider of [1] WR Pierluisi", and "[o]ne of the transfers made by [2] AMAC to [14] Banco Popular, a lienor, who provided adequate consideration in exchange for the funds not to [2] AMAC but to [9] WMP Trust Fund, an insider of [1] WR Pierluisi who controlled [2] AMAC." *Id.*, Section VI(C), ¶ 104 p. 29; and Section VI(D), ¶ 112 p. 31.

10

The totality and specificity of the allegations in the Complaint provide plausible claims of relief by claiming (a) that the transfers made by [2] AMAC and [1] WR Pierluisi were fraudulent as to a debt to the United States arising before the transfer because the transfers were made without fair and adequate consideration given in exchange,[3] and because the debtor was, or as a result of the transfer became, insolvent in violation of Section § 3304(a)(1) of the FDCPA, (b) that the transfers were made with actual intent to defraud under Section 3304(b)(1)(A) of the FDCPA, and (c) that the transfers constituted constructive intent to defraud, because [2] AMAC and [1] WR Pierluisi became insolvent debtors by making these transfers without receiving a reasonably equivalent value in exchange under Section 3304(b)(1)(B) of the FDCPA. The allegations further establish that [14] Banco Popular had such knowledge and duty to inquire as to the transactions as would defeat any defense as a good faith transferee.

The Complaint's specific allegations also duly establish a plausible claim of fraudulent transfer under P.R. Laws Tit. 31, § 6231 because the transfers, as alleged, (a) occurred after the debt to the United States accrued, (b) excluded assets from the debtor's estate, (c) caused or aggravated the debtor's insolvency, and (d) were carried to the benefit of relatives within the fourth degree of consanguinity or second degree of affinity and in gratuitous transactions were the debtors received no benefit.

---

3 As previously explained, under the FDCPA transfers made to benefit third parties are clearly not made for value. *See In re Health Gourmet, Inc.*, 29 B.R. 673, 677 (Bank. Ct. Ma. 1983). [2] AMAC received no value through the transactions in which its unencumbered funds were used to satisfy debts owed by [1] WR Pierluisi in his personal capacity to [14] Banco Popular. [14] Banco Popular is not a secured creditor as to [2] AMAC's unencumbered funds in the Regions Bank account and had to right to receive the funds as payment of antecedent debt.

**VI.    THE COMPLAINT ALLEGES SUFFICIENT FACTS TO CHALLENGE [14] BANCO POPULAR'S STANDING AS A GOOD FAITH TRANSFEREE**

The key element missing from defendant [14] Banco Popular's argument is context. As fully detailed in the Complaint, the financial transfers challenged in the Complaint did not occur in a vacuum. The contemporaneous transfers of funds between May 1 and June 30, 2023, which plaintiff seeks to avoid were part of a scheme designed to evade payment of the restitution judgment, while protecting [1] WR Pierluisi's real estate interests, by using [2] AMAC's unencumbered assets to satisfy all liens encumbering [1] WR Pierluisi's personal assets and assets transferred to [9] WMP Trust Fund, an insider of [1] WR Pierluisi.

The financial transactions through which [1] WR Pierluisi fraudulently sought to satisfy the mortgages encumbering the Conjugal Properties with unencumbered funds belonging to [2] AMAC included payments made on May 1 and 2, 2023, to [14] Banco Popular, contemporaneously— only three days after—from the date in which [1] WR Pierluisi, as President of [2] AMAC, loaned himself $2,946,271.18 from [2] AMAC's unencumbered funds deposited into Regions Bank account ending in 5368, to wit:

(a)  $467,843.93 paid on May 1, 2023, with a check issued from [2] AMAC's Regions Bank account payable to [14] Banco Popular,

(b)  $247,531.00 paid on May 1, 2023, with a cashier's check from Regions Bank payable to [14] Banco Popular, and

(c)  $400,303.00 paid on May 2, 2023, with a cashier's check from Regions Bank payable to [14] Banco Popular.

The following image illustrates the voidable transfers to [14] Banco Popular through which defendant [1] WR Pierluisi sought to divert unencumbered funds belonging to [2] AMAC and deposited into the Regions Bank account xxx5368 to satisfy his personal obligations:



These contemporaneous transactions are precisely the type of multilateral transactions that are to be *collapsed* and treated as phases of a single transaction under fraudulent conveyances analysis. *See HBE Leasing*, 48 F.3d at 634. As alleged in the Complaint, [1] WR Pierluisi and [2] AMAC were long time clients of defendant [14] Banco Popular. The relationship that [14] BPPR had with defendants [1] WR Pierluisi, [10] MA Gonzalez-Coya, their Conjugal Partnership, and [2] AMAC went far beyond the three mortgage-backed loans over the Conjugal Properties. [2] AMAC had approximately eleven accounts in [14] BPPR, and a relationship that extended for years. Similarly, [1] WR Pierluisi and [10] MA Gonzalez-Coya had personal bank accounts in [14] BPPR. As such, [14] Banco Popular was fully aware of their

personal and corporate financial circumstances, including their criminal prosecution and resulting debt to the United States and had a duty under the BSA to inquire as to their transactions. *See* Complaint, ECF #1, Section II(B) ¶¶ 14 and 28, p. 8 and 14; Section IV(A) ¶ 9, p. 11. Thus, at the time of the challenged transfers it was [14] BPPR's responsibility and duty under applicable BSA regulations to know and inquire about the origin of the multi-million-dollar transfers completed by [1] WR Pierluisi with [2] AMAC's corporate funds to satisfy personal loans encumbering properties owned by a third party: [11] WMP Trust Fund.

Moreover, neither [1] WR Pierluisi, nor his wife [10] MA Gonzalez-Coya, were involved in a bankruptcy proceeding at the time of the satisfaction of the mortgages on May 1 and June 30, 2023; nor had they initiated a liquidation of assets process, as [14] Banco Popular well knew. Accordingly, none of the loans secured by the mortgages over the Conjugal Properties and being satisfied in full between May 1 and June 30, 2023, with funds originating from [2] AMAC's Regions Bank account were in default or under acceleration. [14] Banco Popular was not foreclosing on the real estate properties of the Conjugal Partnership of [1] WR Pierluisi and [10] MA Gonzalez-Coya.

Even more significant, [2] AMAC was not a debtor or guarantor of [14] Banco Popular under the mortgages encumbering the Conjugal Properties and did not have a debt with [14] Banco Popular for the properties named in the Complaint. Accordingly, [2] AMAC did not have an antecedent debt pursuant to which it would be making payments to [14] Banco Popular after it was ordered to pay $3,712,000 in restitution to the United State by this court.

The one and only impending financial event looming over defendants [1] WR Pierluisi and [2] AMAC at the time of the fraudulent transfers on May 1 and June 30, 2023, was the $2,035,498.86 and $3,712,000 joint and several restitution debts that the court imposed upon

14

defendants after their guilty pleas in *United States v. Walter R. Pierluisi-Isern, et al.*, Criminal 23-148 (CVR). As alleged, this event was so publicly disseminated by the news media, that [14] Banco Popular, a sophisticated lender and financial entity in Puerto Rico, was fully aware of it.

The timing, the fact that a third party was the entity who benefitted from the transfers of funds, and the absolute failure to apply any funds towards the restitution judgment due and in default, reflects that payments received by [14] Banco Popular from [2] AMAC between May 1 and June 30, 2023, directly or through [1] WR Pierluisi, to completely satisfy the mortgages encumbering the Conjugal Properties donated to [11] WMP Trust Fund harmed the ability of the United States to collect and [14] Banco Popular would have known, or should have inquired, about this. As such, these transactions are subject to avoidance pursuant to the FDCPA.

Accordingly, the factual allegations of the Complaint are sufficient to establish a plausible claim that defendant [14] Banco Popular knowingly enabled, facilitated, and made it possible for defendants to achieve the goal of diverting [2] AMAC's unencumbered funds to satisfy personal debts owed by [1] WR Pierluisi and his wife [10] MA González-Coya. The allegations are also sufficiently to raise a valid issue of fact as to [14] Banco Popular's lack of standing as a "good faith transferee" because the allegations are that [14] Banco Popular had actual knowledge of [2] AMAC's and [1] WR Pierluisi's financial difficulties when it took [2] AMAC's assets to benefit a third party, the [9] WMP Trust Fund that owned the mortgaged Conjugal Properties.

The United States respectfully submits that the Complaint contains adequate facts in support of the allegation that [14] Banco Popular was knowledgeable of the fraudulent nature of the transfer of funds made by its longtime clients, defendants [1] WR Pierluisi and [2] AMAC,

and the plaintiff should therefore be afforded the opportunity to prove its allegations and obtain the remedies requested in the Complaint against [14] Banco Popular.

## VII.    THE COMPLAINT ALLEGES FACTS SUFFICIENT TO ESTABLISH A VIOLATION OF THE PROVISIONS OF PUERTO RICO LAW REGARDING RESCISSION OF FRAUDULENT CONVEYANCES.

[14] Banco Popular argues that the Complaint does not state actionable claims for fraudulent avoidance under Puerto Rico law because "[t]he Complaint is devoid of any allegations capable of establishing that BPPR conspired to defraud anyone, much less the United States as a creditor of AMAC or Mr. Pierluisi." ECF #68, p. 29. The allegations in the Complaint are to the contrary. We explain.

[14] Banco Popular acknowledges in the Motion to Dismiss that Puerto Rico law provides for rescission of transactions executed to defraud creditors. *Id.*, p. 28 (citing P.R. Laws, Tit. 31, § 6231). [14] Banco Popular also recognizes that for a cause of action of rescission under Puerto Rico law to prosper, the claimant must allege that (a) a judgment or obligation exists against the debtor-transferor, (b) the debtor-transferor transferred his property to another *who knows about the pre-existing debt*, and (c) that the creditor-claimant must be prejudiced by the transfer and has no other remedy to recover its damages. *Id.* (citing *Hernandez-Rosado*, 20 D.P.R. 163, 167 (1914)). P.R. Laws Tit 31, § 6231 (2020), however, further establishes that legal transactions by a debtor are presumed to be made to defraud creditors when: (a) they are dated after the credit of the injured creditor, or is made to prevent the consequences of a malicious act, (b) they exclude an asset from the debtor's estate, (c) they produce or aggravate the insolvency of the debtor, or (d) they are granted with the intention of undermining the action of creditors, which malicious intent is presumed in transactions carried out between relatives within the fourth degree of

consanguinity or second degree of affinity, in gratuitous transactions, and in onerous transactions executed after a sentence or a writ of attachment has been issued against the debtor.

As more fully explained above, the Complaint duly alleges that [1] AMAC and [1] WR Pierluisi had a debt owed to the United States. ECF #1, Section IV(A), pages 11-12. The Complaint also duly alleges that [14] Banco Popular, a transferor of [2] AMAC's unencumbered assets knew or should have known about this pre-existing debt to the United States. *Id.*, Section IV(A) ¶ 28, p. 14. The Complaint also alleges that [1] WR Pierluisi transferred the proprietary interest he shared in three real estate properties with his wife [10] MA Gonzalez-Coya, the "Conjugal Properties" to defendant [9] WMP Trust Fund to hide assets from the United States, after they became aware of the investigation into [1] WR Pierluisi's and [2] AMAC's wrongdoing that was commenced in October 2022. *Id.*, Section IV(A), ¶¶ 1-3, p. 10, Section IV(B)(1), ¶¶ 29-30, pp. 14-15. The Complaint further alleges that the transactions that plaintiff seeks to avoid, in which unencumbered funds belonging to [2] AMAC and deposited in Regions Bank account ending in xxx5638 were fraudulently transferred to [14] Banco Popular in contemporaneous transactions on May 1 and May 2, 2023 and through June 30, 2023 to satisfy debts owed by [1] WR Pierluisi and [10] MA González-Coya, directly or through straw transactions in which [1] WR Pierluisi intervened, are the six transactions listed in the Complaint's prayer for relief and identified as Transactions number 5, 14, 15, 16, 17 and 18. *Id.*, Section VI, pp. 53-54.

Accordingly, as more fully explained in Section VI above, the Complaint duly alleges that [14] Banco Popular was a transferee that was fully aware of the legal and financial situations of the debtors, [2] AMAC and [1] WR Pierluisi and was, therefore, a transferee lacking in good faith. It is this alleged actual or constructive knowledge of the debtor's legal and financial conditions and the improper use of [2] AMAC's corporate assets to satisfy [1] WR Pierluisi's personal

obligations that makes [14] Banco Popular a transferee who *was aware, when taking the transfer, of the fraudulent design of the transferor ('conscus fraudis')*. See *VELCO v. Industrial Serv. Apparel*, 143 D.P.R. 243, 255 (1977) (citing J. Puig Brutau, *Fundamentos del Derecho Civil*, Barcelona Bosch, Tome II, Vol. I, p 335).

Under such circumstances, as duly alleged in the Complaint [14] Banco Popular did not take the assets transferred by [2] AMAC and [1] WR Pierluisi in good faith under Puerto Rico law, but subject to the rescission provisions of P.R. Laws Tit 31, § 6231. The allegations are not that [14] Banco Popular conspired to commit fraud, but that it knew, or should have known, of the fraudulent intent of the transferors and proceeded with the transaction in willful blindness of factual and legal circumstances that made the transfer rescindable because it was pursued to defraud creditors.

## VIII. BANCO POPULAR'S ALLEGATIONS IN SUPPORT OF THE MOTION TO DISMISS

### A. The payments to [14] Banco Popular in satisfaction of loans secured by mortgages over the Conjugal Properties with funds originating from [2] AMAC are not preferences conferred to a secured creditor because [2] AMAC is not a debtor of [14] Banco Popular under those loans.

Banco Popular first argues that the payments it received to satisfy the debts secured by the mortgages encumbering the Conjugal Properties may not be deemed fraudulent transfers because those payments constituted preferences paid to a secured creditor instead of fraudulent conveyances. ECF #68, pp. 13-16. In support, [14] Banco Popular cited *In Re Sharp Int'l Corp*. 403 F. 3d 43, 53, (2nd Cir. 2005) for the proposition that "a conveyance which satisfies an

antecedent debt made while the debtor is insolvent is neither fraudulent nor otherwise improper, even if its effect is to prefer one creditor over another."[4]

This allegation fails to acknowledge that the Complaint avers that the debtors on the loans secured by mortgages over the Conjugal Properties being satisfied were [1] WR Pierluisi and [10] MA González-Coya. [2] AMAC was not a debtor under the loans, and [14] Banco Popular was, therefore, not a secured creditor as to the payments made with [2] AMAC's funds to satisfy the antecedent debt of [1] WR Pierluisi and [10] MA González-Coya.

More specifically, [2] AMAC was not indebted to [14] Banco Popular for the purchase of a beach apartment at A-403 Palmas Doradas, Humacao Puerto Rico, and had no reason to make any type of payment, preferential or otherwise, to satisfy said loan in advance of its maturity. As alleged in the Complaint, [14] Banco Popular knew that the payoff for the mortgage on the loan for Palmas Doradas beach apartment was issued by [2] AMAC, an entity who did not have any obligation, secured or unsecured, to satisfy such debt. ECF #1, Section IV(B)(8), ¶¶ 66-75.

[14] Banco Popular received and credited [2] AMAC's check number 112, dated May 1, 2023, to the order of Banco Popular, for $467,843.93, from its Regions Bank operational account ending in 5368, to pay off the loan no. 0701245631, for the Palmas Doradas beach

---

4 *In Re Sharp Int'l Corp.* involved a Corporate Chapter 11 debtor who brought adversary proceeding claiming that lender had aided and abetted principals in committing breach of their fiduciary duty in diverting assets from debtor, and to set aside payment that lender received from debtor in repayment of preexisting loan as actually or constructively fraudulent as to creditors. Unlike this case, however, plaintiff in that case did not, however, allege that the lender/transferee that the payments received from the lender's debtor were not in good faith or to alleges badges of fraud in the transactions. *Id.*, 403 F.3d at 48. For that reason, the Second Circuit affirmed the district court's decision to dismiss for failure to state a claim. The facts are substantially distinguishable from the facts in the present case. In our case, [2] AMAC is not a debtor of [14] Banco Popular and the transfer of its unencumbered funds are not being made to pay an antecedent debt of [2] AMAC. The payment cannot be a preference between creditors because [14] Banco Popular was not a creditor of [2] AMAC. Like the situation in *HBE Leasing*, this is a case where the transfer of funds from [2] AMAC to [14] Banco Popular lack fair consideration because [2] AMAC received no benefit in return for the payments in satisfaction of the mortgages. [1] WR Pierluisi's payments to [14] Banco Popular, likewise, lack consideration because in making those payments he was benefiting a third party: [9] WMP Trust without requiring fair consideration in return for that gratuitous gift.

apartment. The memo section of the check from [2] AMAC clearly stated its intended purpose to satisfy the entirety of the mortgage, "saldo prestamo 0701245631" (which translates to "Pay off loan 0701245631" in English). This fact also made [14] Banco Popular aware of the fact that the contemporaneous payments made by [1] WR Pierluisi on May 1, 2023, with cashier's check issued by Regions Bank to satisfy the mortgage encumbering the apartment in Condominio Sol y Playa, and on May 2, 2023, with cashier's checks issued by Regions Bank to satisfy the mortgage encumbering the residence in Urb. Parque de Bucare originated from [2] AMAC's unencumbered funds deposited in Regions Bank.

Transferees that are aware of the legal and financial situations of the transferor, like [14] Banco Popular is specifically alleged to have been in this case, are not protected by the good faith defense under Section 3307(a) of the FDCPA. *See U.S. v. Schippers*, 982 F.Supp.2d 948, 973 (S.D. Ia. 2013) (court found that wife was not a good faith transferee of husband, debtor in restitution judgment, in transfers executed through a divorce decree entered after criminal prosecution). If the transferee has actual or constructive knowledge of the intent to defraud, fair consideration is deemed to be lacking and the transfer will be deemed a fraudulent conveyance. *In re Sharp Intern. Corp.*, 403 F.3d 43, 53 (2nd Cir. 2005) (citing *HBE Leasing, 48 F.3d at 633* ("The UFCA identifies several situations involving 'constructive fraud,' in which a transfer made without fair consideration constitutes a fraudulent conveyance, regardless of the intent of the transferor."). This is so because "fair consideration requires that the exchange not only be for equivalent value, but also that the conveyance be made in good faith." *Ede v. Ede*, 193 A.D.2d 940, 941-42 (NY 3d Dep't 1993) (holding that fair consideration was lacking in face of evidence "which can admit of no finding other that … bad faith."). Accordingly, transfers can be set aside if a

transferee, like [14] Banco Popular, knew the debtor was intending not only to pay some creditors, but also to defraud others. *See Van Iderstine v. National Discount Co.*, 20 U.S. 575, 583 (1913).

Even the First Circuit Court in *Boston Trading v. Burnazos*, 825 F. 2nd 1504 (1st Cir 1987), stated that "[f]raudulent conveyance law is basically concerned with transfers that 'hinder, delay or defraud' creditors; it is not ordinarily concerned with how such debts were created." *Id.*, 825 F.2d at 1510. The facts alleged in the Complaint entail transfers that hindered, delayed, and defrauded the United States and [14] Banco Popular had a *duty to inquire* as to the nature of the transfers.

To prevail on a good faith defense, the transferee bears the burden of proving by a preponderance of the evidence that (1) it gave value to the debtors for the payments, and (2) received the payments in good faith. *See In re Pearlman*, 440 B.R. 900, 906 (M.D. Fla. 2010). In establishing that good faith, the court will analyze both the transferee's actual and imputed knowledge. *Id.* In this inquiry "whether the transferee 'had knowledge of such facts or circumstances as would have induced an ordinary prudent person to make inquiry, and which inquiry, if made with reasonable diligence, would have led to the discovery of the [transferor's] fraudulent purpose." *Id.* (citing *Wiand v. Waxenberg*, 611 F.Supp.2d 1299, 1319-20 (M.D. Fla. 2009).

There was no legal justification for [14] Banco Popular to ignore its duty to inquire pursuant to BSA regulations regarding know your client, or to choose to remain willfully blind to the fact that [2] AMAC, was paying off a mortgage on a property it did not own, fully aware of its client's $3,712,000 restitution debt to the United States. There was also no legal basis for [1] WR Pierluisi and [10] MA Gonzalez-Coya to satisfy mortgages for properties owned by

[11] WMP Trust Fund, while [1] WR Pierluisi owed a $2,035,498.86 restitution debt to the United States.

Furthermore, the owner of the encumbered Conjugal Properties at the time of the fraudulent transfers was [9] WMP Trust Fund, so the benefit of the cancellation of the mortgages accrued to this third party—not to [2] AMAC or [1] WR Pierluisi, the debtors whose funds were being disbursed. Consequently, all ensuing arguments by [14] Banco Popular pertaining to [2] AMAC and the mortgages over [1] WR Pierluisi and [10] MA Gonzalez-Coya's Conjugal Properties are distinguishable as a matter of fact and untenable as a matter of law.

In the present case, the facts alleged in the Complaint support the claim that the transfers made to [14] Banco Popular were in violation of Title 18 U.S.C.§ 3663A—the Mandatory Victims Restitution Act, Title 18 U.S.C. § 3664(m)(l)(A)(ii)—the Criminal Restitution statute, and the FDCPA because [14] Banco Popular was not a transferee in good faith and because the transactions ought to be collapsed as phases of a single fraudulent conveyance.

> **B. [14] Banco Popular, a secured creditor with a valid claim pursuant to loan encumbering the Conjugal Properties, is not immune from avoidance of fraudulent conveyances transferring assets of [2] AMAC not encumbered by a valid lien.**

[14] Banco Popular argues that it was a *creditor* with a valid *claim* at the time of the fraudulent transfers as both terms are defined in Subchapter D of the FDCPA. ECF #68, pp. 16-18. *See* 28 U.S.C. § 3301(3) and (4). It is correct, and recognized in the Complaint, that [14] Banco Popular was a creditor of [1] WR Pierluisi and [10] MA Gonzalez-Coya with a valid claim pursuant to the loans secured by mortgages encumbering the Conjugal Properties. However, as explained before, [14] Banco Popular was not a creditor with a valid claim as to the $3.8 million in unencumbered funds deposited into [2] AMAC's Regions Bank account during the month of April 2023. It is the transfer of those funds belonging to [2] AMAC between April 28, 2023 and

June 30, 2023, that plaintiff seeks to avoid. As fully explained above, [14] Banco Popular did not have a valid lien or claim over those unencumbered funds of [2] AMAC.

Furthermore, the FDCPA does not grant creditors blanket immunity, nor does it exclude them from the examination and analysis of intent involved in fraudulent transfer transactions. A valid creditor may very well be involved in a fraudulent transaction to obtain hinder, delay or defraud other creditors and such transactions would, accordingly, be subject to avoidance. *Id. Boston Trading*, 825 F. 2nd at 1510. [14] Banco Popular fails to establish that its secured creditor status as to [1] WR Pierluisi and [10] MA Gonzalez-Coya shields it from the application of the voidability under the FDCPA fraudulent transfer action statute for transfers of [2] AMAC's unencumbered assets under circumstances, as fully alleged in the Complaint and explained above, where [14] Banco Popular lack standing as a good faith transferee. 28 U.S.C. § 3304. As explained above, [14] Banco Popular had a duty to inquire under BSA regulations and had ample knowledge of [2] AMAC's and [1] WR Pierluisi's legal and financial circumstances as to have actual knowledge of the fraudulent nature of the transfers.

### C. Payments to satisfy the loans secured by mortgages encumbering the Conjugal Properties did not provide fair value because they benefitted a third party, not [2] AMAC, the debtor making the transfer.

[14] Banco Popular argues that payments to satisfy debts secured by liens, such as mortgage liens, are considered transfers with value outside the scope of the FDCPA's fraudulent conveyance reach. ECF #68, pp. 17-18 and 25-28. *See* 28 U.S.C. § 3303(a). However, as fully explained in Section III above, transfers made to benefit third parties are not deemed transfers for value. *See In re Health Gourmet, Inc.*, *supra.* In this case, the Complaint alleges that the satisfaction of the mortgages was made to benefit a third party: the [9] WMP Trust Fund.

Furthermore, also as previously stated, the multiple transfers of [2] AMAC's funds to [14] Banco Popular, directly or through [1] WR Pierluisi, to satisfy the loans and mortgages encumbering the Conjugal Properties do not constitute satisfaction of antecedent debt because [2] AMAC was not a debtor under those loans and [14] Banco Popular did not have a secured interest over [2] AMAC's $3.8 million deposited in Regions Bank. In this case, the allegations affecting [14] Banco Popular's interests are that [2] AMAC's unencumbered funds were used to devise and implement a scheme during May and June 2023 whereby the United States was defrauded by having those unencumbered corporate assets used to pay off debts owed by [1] WR Pierluisi and his wife. Such payments by [2] AMAC to benefit [1] WR Pierluisi, his wife [10] MA Gonzalez-Coya and [9] WMP Trust Fund do not constitute fair consideration or value to [2] AMAC.

Furthermore, Section 3303(b) of the FDCPA establishes that a person gives a reasonably equivalent value if the person acquires an interest of the debtor in an asset pursuant to a regularly conducted, non-collusive foreclosure sale or execution of a power of sale for the acquisition or disposition of such interest upon default under a mortgage, deed of trust, or security agreement. The allegations of the Complaint establish that no such reasonable equivalent value was exchanged in the transactions to be voided. The mortgages subject of the challenged fraudulent conveyances in the Complaint were neither in default, nor a foreclosure sale or execution of a power of sale, requiring expedited payment to [14] Banco Popular. Moreover, the terms of the mortgage loan agreement stated that their expiration dates were more than ten years away. Accordingly, the transfer of the Conjugal Properties to the [9] WMP Trust Fund, where [1] WR Pierluisi's wife and children are the beneficiaries, and the satisfaction of all liens encumbering those Conjugal Properties were multilateral transactions implemented as phases of a single collusive

scheme designed to defraud the United States, a creditor of [1] WR Pierluisi and [2] AMAC. Thus, the Complaint specifically alleges that the financial transactions as to which plaintiff seeks avoidance, including the payments in the full satisfaction the three mortgages, were intended to protect defendant's [1] WR Pierluisi and [10] MA González Coya and their Conjugal Partnership's interests from the execution of the judgment of restitution imposed by this court.

### D. Any portion of a debtor's property that is unencumbered by mortgage, the equity owned by the mortgagee, is subject to claim by a creditor, including actions under the FDCPA.

[14] Banco Popular argues that the Conjugal Properties are "outside of the reach of the fraudulent conveyance actions of the FDCPA" because they were encumbered by valid mortgages in favor of [14] Banco Popular. ECF #68, p. 21. This argument misconstrues and misunderstands the statute and the Complaint. As fully recognized by [14] Banco Popular, "any portion of a debtor's property that is unencumbered by mortgage—the equity—is part of the bankrupt's estate" that will be subject to fraudulent conveyance claims. *In re Mahendra*, 131 F.3d 750, 755 (8th Cir. 1997); ECF #68, p. 19. Only fully encumbered property will be deemed not an asset under the FDCPA. *Cf. Cage v. Wyo-Ben, Inc. (In re Ramba Inc.)*, 437 F.3d 457, 460 (5th Cir. 2006). Accordingly, the mere fact that the Complaint alleges and acknowledges that [14] Banco Popular held valid liens over the Conjugal Properties does not place those properties beyond reach of the FDCPA because the United States, as a creditor of the owners of those properties, may file a claim to access any unencumbered equity value in those properties in satisfaction of the debt owed by [1] WR Pierluisi under the Judgment of Restitution.

Furthermore, the Motion to Dismiss misconstrues the claims in the Complaint. Plaintiff seeks avoidance of the transfer of the Conjugal Properties to the [9] WMP Trust Fund without in such process seeking voidance or otherwise challenging the valid mortgages encumbering the

properties. Plaintiff is not challenging, nor is it seeking preferred rank or status as to the valid mortgages over the Conjugal Properties perfected prior to the 25 fraudulent transfers identified in Section VI of the Complaint, Prayer for Relief, pp. 52-55, as to which the United States seeks a declaration of nullity and voidance.

Otherwise, the assets that plaintiff is pursuing against [14] Banco Popular are the portion of the unencumbered $3.8 million deposited into [2] AMAC's Regions Bank account and used to satisfy the loans secured by the mortgages encumbering the Conjugal Properties through payments between May 1 and June 20, 2023, to [14] Banco Popular and identified as transactions number 5, 14, 15, 16, 17, and 18 in the Prayer for Relief. ECF #1, Section VI, p. 53-54.

### E. The United States may seek collection of an order of restitution issued in criminal proceedings through any legal means, including any causes of action available under Puerto Rico law.

[14] Banco Popular's fifth allegation is that the Complaint fails to establish that [1] WR Pierluisi had a substantial nonexempt interest that could place the Conjugal Properties within the reach of a fraudulent transfer avoidance action under the FDCPA. While [14] Banco Popular fails to cite the specific section of the FDCPA that supports such allegation, the statute does establish, at §3303(b)(2) that it shall not be construed to curtail or limit the right of the United States under any other Federal law or any State law— to collect any fine, penalty, assessment, restitution, or forfeiture arising in a criminal case.

Defendant [1] WR Pierluisi is a criminal defendant with a restitution debt which places him well within the reach of the FDCPA and the criminal restitution statutes in Title 18. As such, not only the FDCPA but also the criminal statutes at 18 U.S.C. § 3664(m)(1)(A)(ii) dictate that an order of restitution may be enforced by the United States by all available and reasonable means, including collection of any debt owed pursuant to a criminal proceeding under Puerto Rico law.

Additionally, and not less important, it is proper to highlight that [14] Banco Popular does not have standing to claim the type of interests that [1] WR Pierluisi had or if such interests could place the Conjugal Properties outside the reach of a fraudulent transfer avoidance action under the FDCPA. As alleged in the Complaint, and established by § 3304 (b)(l)(A) of the FDCPA, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation with actual intent to hinder, delay, or defraud a creditor.

> ### F.  [14] Banco Popular's relationship to [2] AMAC and [1] WR Pierluisi was that of a financial institution with a long-standing relationship, [14] Banco Popular was not merely an unrelated lender to a borrower.

[14] Banco Popular argues that its relationship to [2] AMAC and [1] WR Pierluisi was limited to that of an unrelated lender and that, therefore, it had no duty to inquire or actual or constructive knowledge of fraud. ECF #68, pp. 23-25. The allegations in the Complaint, which the court must take as true for purposes of its analysis on a motion to dismiss are to the contrary.

As more fully explained in Section VI above, the Complaint alleges that [14] Banco Popular had a long-standing financial relationship with defendants [1] WR Pierluisi, [10] MA Gonzalez-Coya, their Conjugal Partnership, and [2] AMAC that went far beyond the three mortgage-backed loans over the Conjugal Properties. *See* Complaint, ECF #1, Section II(B) ¶ 14, p. 8. [14] Banco Popular was fully aware of their personal and corporate financial circumstances, including their criminal prosecution and resulting debt to the United States and had a duty under the BSA to inquire as to their transactions. *Id.*, Section IV(A) ¶ 28, p. 14. Thus, at the time of the challenged transfers it was [14] BPPR's responsibility and duty under applicable BSA regulations to know and inquire about the origin of the multi-million-dollar transfers completed by [1] WR Pierluisi with [2] AMAC's corporate funds to satisfy personal loans encumbering

properties owned by a third party: [11] WMP Trust Fund. The Complaint further alleges that the transactions of May 1 and June 30, 2023, satisfying in full the loans guaranteed by mortgages held by [14] Banco Popular were characterized by indicia or badges of fraud, including that the "transfers made by [1] WR Pierluisi were to [14] Banco Popular, a lienor, who provided adequate consideration **not** to [1] WR Pierluisi in exchange for the funds, but to [9] WMP Trust Fund, an insider of [1] WR Pierluisi", and "[o]ne of the transfers made by [2] AMAC to [14] Banco Popular, a lienor, who provided adequate consideration in exchange for the funds **not** to [2] AMAC but to [9] WMP Trust Fund, an insider of [1] WR Pierluisi who controlled [2] AMAC." *Id.*, Section VI(C), ¶ 104 p. 29; and Section VI(D), ¶ 112 p. 31.

For these reasons, the factual allegations of the Complaint are sufficient to establish a plausible claim that defendant [14] Banco Popular knowingly enabled, facilitated, and made it possible for defendants to achieve the goal of fraudulently diverting [2] AMAC's unencumbered corporate funds to satisfy personal debts owed by [1] WR Pierluisi and his wife [10] MA González-Coya. The allegations are also sufficiently to raise a valid issue of fact as to [14] Banco Popular's lack of standing as a "good faith transferee" because the allegations are that [14] Banco Popular had actual knowledge of [2] AMAC's and [1] WR Pierluisi's financial difficulties when it took [2] AMAC's assets to benefit a third party, the [9] WMP Trust Fund that owned the mortgaged Conjugal Properties.

## IX.    CONCLUSION

**WHEREFORE**, the United States respectfully requests that this Honorable Court deny [14] Banco Popular's Motion to Dismiss because the allegations in the Complaint present facts sufficient to make a plausible claim against [14] Banco Popular on all counts of the Complaint.

## CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED** that on this date, undersigned counsel electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record; and mailed USPS Certified to Pro-Se defendant Walter R. Pierluisi-Isern, 54012-510, Pensacola Federal Prison Camp, P.O. Box 3949, Pensacola, Fl 32516.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 25th day of November, 2024.

W. Stephen Muldrow
United States Attorney
350 Carlos Chardón St., Suite 1201
San Juan, Puerto Rico 00918
Tel. (787) 766-5656
Fax. (787) 771-4049

s/ Dennise N. Longo Quiñones
Dennise N. Longo Quiñones
Assistant U.S. Attorney
USDC-PR 211408
dennise.longo.quinones@usdoj.gov

s/ M.González
Maritza González-Rivera
Assistant U.S. Attorney
USDC-PR 208801
maritza.gonzalez@usdoj.gov