IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff,<br>vs.<br>[1] WALTER R. PIERLUISI-ISERN,<br>[2] AMERICAN MANAGEMENT AND ADMINISTRATION CORPORATION, A.K.A. AMAC,<br>[3] ATARDECERES DEL YUNQUE, INC.<br>[4] PIER PROPERTY MANAGEMENT INC.,<br>[5] PRG AFFORDABLE HOUSING DEVELOPMENT L.L.C.,<br>[6] HGX DOMINICANA SRL,<br>[7] BOSQUE VERDE L.L.C.,<br>[8] JANUS L.L.C.,<br>[9] FIDEICOMISO WMP (WMP TRUST FUND),<br>[10] MARCIA DE LOS ANGELES GONZÁLEZ-COYA FERNÁNDEZ,<br>[11] WALTER SIMON PIERLUISI GONZÁLEZ-COYA,<br>[12] MARCIA BEATRIZ PIERLUISI GONZÁLEZ-COYA,<br>[13] PATRICIA DE LOS ANGELES PIERLUISI GONZÁLEZ-COYA, and<br>[14] BANCO POPULAR DE PUERTO RICO,<br>Defendants | Civil Case No. 3:24-CV-1334 (CVR)<br><br>FRAUDULENT TRANSFER COMPLAINT<br><br>Title 28 U.S.C. § 3304<br>18 U.S.C. § 3664(m)(1)(A)(ii) |

**BBPR'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

**TO THE HONORABLE COURT**:

    **COMES NOW**, Banco Popular de Puerto Rico (hereinafter, "BPPR"), by and through the undersigned counsel, and hereby files its Reply to Plaintiff's Opposition to BPPR's Motion to

1

Dismiss the Complaint, Dkt. 82, ("Opposition"),[1] and in support thereof, respectfully states and prays as follows:

**I.    INTRODUCTION**

On October 21, 2024, BPPR filed a *Motion to Dismiss Plaintiff's Complaint,* Dkt. 68, whereby it established that the conclusory and threadbare allegations of the Complaint fail to state plausible claims under the Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3001-3308 (2024) ("FDCPA"), and P.R. Laws Ann. Tit. 31 § 6231 (2024). In response, the United States of America ("Plaintiff" and/or "the United States") contends that the Complaint meets the pleading standard under Federal Rule of Civil Procedure 12(b)(6). Essentially, the United States argues that the Complaint plausibly establishes that BPPR acted in bad faith because it allegedly provided banking services to co-defendants Mr. Walter R. Pierluisi-Isern ("Mr. Pierluisi") and American Management and Administration Corporation ("AMAC"), and thus, had a duty to know its customer or inquire further about transactions between AMAC and Mr. Pierluisi that occurred before Mr. Pierluisi and his wife, codefendant Marcia de los Ángeles González Coya Fernández ("Mrs. González-Coya")[2], satisfied three debts with BPPR that were secured by mortgage liens.

Nothing in the Opposition justifies keeping BPPR as a Defendant in this proceeding. Plaintiff proposes a narrative regarding alleged duties to inquire or to suspect that AMAC and Mr. Pierluisi were engaged in a scheme to defraud the United States, that are not grounded on well-pleaded allegations of the Complaint. Moreover, Plaintiff constantly puts forth conclusory allegations that are not supported by any inferences that may be drawn from the Complaint.

---

[1] BPPR sought and was granted leave to file a reply and two extensions of time until January 10, 2025, to file its reply. *See* Dkts. 85 and 88.
[2] Hereinafter, and jointly with Mr. Pierluisi, ("Conjugal Partnership Pierluisi-González").

Plaintiff's Opposition makes clear that the Complaint revolves around an allegedly fraudulent scheme by Mr. Pierluisi and AMAC that does not involve any participation by BPPR nor any knowledge that the Conjugal Partnership Pierluisi-González or AMAC sought to evade payment of a debt of restitution by satisfying valid and antecedent debts with BPPR. As will be discussed, the Complaint repeats conclusory assertions, citing scant and inapplicable case law. Plaintiff's citations to case law do not establish plausible claims for relief against BPPR.

II.   **ARGUMENT**

   a. **New factual allegations foreign to the Complaint must be disregarded as unsupported because Plaintiff cannot amend its pleading in a legal brief in opposition to a Motion to Dismiss.**

It is axiomatic that "a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Velázquez Ortiz v. FDIC*, No. 11-1757 (PG), 2012 U.S. Dist. LEXIS 54876, at *18 (D.P.R. April 18, 2012); *see also Ward v. Alphacore Pharma, LLC,* 89 F.4th 203, 210 (1st Cir. 2023) (*rejecting* claim that "appear[ed] for the first time in his lawyer's memorandum opposing the motion to dismiss").

In its Opposition, Plaintiff offers a narrative embellished by conclusory assertions that are not supported by the Complaint and improperly seeks to amend the allegations of the Complaint. The following contentions are not found in the Complaint and should be rejected: (i) that Mr. Pierluisi and AMAC were "long time clients of BPPR, Dkt. 82, p. 13; (ii) AMAC had approximately eleven accounts in BPPR and a relationship that extended for years, *id.*; (iii) "BPPR was fully aware of [Mr. Pierluisi's and AMAC's] personal and corporate financial circumstances, including their criminal prosecution and resulting debt to the United States . . ."; *id.*, pp. 13-14 and 27; (iv) neither Mr. Pierluisi nor his wife were involved in bankruptcy proceedings at the time of the satisfaction of the mortgages, as . . . Banco Popular well knew."; *id.,* p. 14; (v) none of the

loans secured by mortgages over the Conjugal Properties and being satisfied in full, were in default or acceleration; (vi) BPPR was not foreclosing on the real estate properties, *id.*; (vi) "Banco Popular had a long-standing financial relationship with defendants . . . [Mr.] Pierluisi . . . MA González Coya, their Conjugal Partnership and . . . AMAC that went far beyond the three mortgage-backed loans over the Conjugal Properties.", *id.* p. 27; (vii) Banco Popular was fully aware of Mr. Pierluisi's and Gonzalez Coya's personal and corporate financial circumstances, including their criminal prosecution and resulting debt to the United States, *id.*

> b. **The BSA does not establish a private right of action nor standards of care that the United States may invoke in this Case.**

The *Currency and Foreign Transactions Reporting Act of 1970*, commonly known as the Bank Secrecy Act ("BSA")/Anti Money Laundering ("AML"), 12 U.S.C. §§ 1829b, 1951-1960 (2024); 31 U.S.C. §§ 5311-14, 5316-36 (2024), imposes an obligation on banks and financial institutions to report suspicious activity indicative of criminal activity to the U.S. Government. *See Spitzer Management, Inc. v. Interactive Brokers, LLC*, No. 1:13 CV 2184, 2013 WL 6827945 at *6 (N.D. Ohio 2013).

The legal standing to enforce the BSA and issue controlling regulations primarily lies with the U.S. Treasury Department, who is the agency bestowed with the authority to mandate recordkeeping and reporting requirements for financial institutions under the BSA. *See* 31 CFR § 1010.911 (2025). The Treasury Department's Financial Crimes Enforcement Network (FinCEN) is authorized to examine financial institutions for compliance and take enforcement actions against them for violation of those requirements. *See Mohammad Farshad Abdollah Nia v. Bank of Am., N.A.*, 725 F. Supp. 3d 1150, 1166 (S.D. Cal March 26, 2024).

Moreover, the BSA does not create a private cause of action, but rather codifies a duty to the U.S. Government. *Spitzer Management, Inc., 2013 WL 6827945* at *7 ("no court has found

that . . . monitoring requirements give rise to a duty of care owed to individual plaintiffs."); *Martínez Colón v. Santander Nat. Bank*, 4 F. Supp. 2d 53, 57 (D.P.R. 1998) (*stating* that "[t]he Bank Secrecy Act provides for civil and criminal penalties, but a defendant's only liability is to the government, and, in particular, to the Secretary of the Treasury. 31 U.S.C. §§ 5321–22. Congress' purpose in enacting the statute was to ensure that certain business records assist government agencies in conducting criminal, tax, or regulatory investigations. 12 U.S.C. § 1951. The Court finds no reason, and Plaintiffs have failed to point to one, for rebutting the presumption against implied rights of action."). Plainly put, "the duties created by the BSA are those owed by a bank to the federal government, through the corresponding governmental bodies bestowed with authority to scrutinize compliance, and not to any private party. . . ." *See Navy Fed. Credit Union v. Lentz*, 78 Va. App. 250, 256 (Va. Ct. App. 2023).

Relatedly, courts have held that the BSA does not impose a duty of care. *See In re Agape Litig.*, 681 F.Supp.2d 352, 360 (E.D.N.Y. 2010) ("[B]ecause the Bank Secrecy Act does not create a private right of action, the Court can perceive no sound reason to recognize a duty of care that is predicated upon the statute's monitoring requirements.") (*citing Aiken v. Interglobal Mergers and Acquisitions,* No. 05–CV–5503, 2006 WL 1878323, at *2 (S.D.N.Y. 2006) (*finding* that the Bank Secrecy Act did not create a private right of action and therefore did not provide a basis for imposing a duty of care upon the defendant")); *Armstrong v. American Pallet Leasing Inc.*, 678 F. Supp. 2d 827, 2009 U.S. Dist. LEXIS 77138 ** 127 (N.D. Iowa 2009) (*concluding* in the context of a claim for breach of fiduciary duties, that the Bank Secrecy Act does not impose a duty of care or create a private cause of action) ("Plaintiffs . . . argue for the court to recognize a duty of care based upon the monitoring and reporting requirements under the Bank Secrecy Act … Plaintiffs

cite no decision by an Iowa court, or any other court, recognizing such a duty arising from that Act. Rather, courts have uniformly rejected such an argument.").

This Court need not consider Plaintiff's after-the-fact allegations regarding purported duties stemming from the BSA that were raised in the Opposition. *See Díaz-Zayas v. Mun. of Guaynabo*, 600 F. Supp. 3d 184, 195 (D.P.R. 2022) (*stating* that in determining the sufficiency of a *Complaint* under Rule 12(b)(6), the Court need not consider after-the-fact allegations and arguments raised by Plaintiff for the first time, by means of an opposition to a motion to dismiss). Each of the counts of the *Complaint* arise from the FDCPA and Puerto Rico law, with no trace of reliance on the BSA and its provisions. Plaintiff's attempt to include additional claims and amend allegations through its *Opposition*, via abstract and hollow references to proffered responsibilities, is plainly improper. *See Velázquez Ortiz*, 2012 U.S. Dist. LEXIS 54876, at *18.

Even if for the purpose of argument, this Court determines that it may consider the conclusory assertions contained in the Opposition that charge BPPR with an alleged duty to inquire into Mr. Pierluisi's and AMAC's dealings pursuant to the BSA, the BSA does not establish a private right of action nor does it impose a duty of care that may be raised by Plaintiff to state a claim under the FDCPA. Plaintiff's threadbare allegations do not support a standard of care that may be imputed to BPPR in connection with the allegations of the Complaint. Therefore, this Honorable Court should reject the arguments raised in the Opposition. *See In re Agape Litig.*, 681 F. Supp. 2d at p. 360; *Armstrong*, 678 F. Supp. 2d at p. 874.

c. **The Complaint lacks any allegations to support a claim under the Mandatory Victims Restitution Act (MVRA).**

This Honorable Court should also strike and reject the conclusory and bare assertion on page 22 of the Opposition, that the facts of the *Complaint* may support a claim for violations of the Mandatory Victims Restitution Act (MVRA).

"The [MVRA] is one of several federal statutes that govern federal court orders requiring defendants convicted of certain crimes to pay their victims restitution." *Lagos v. United States*, 584 U.S. 577, 580 (2018). The specific provision cited by Plaintiff in its Opposition provides the following:

> (i) An order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title [18 USCS §§ 3571 et seq. and 3611 et seq.]; or
>
> (ii) by all other available and reasonable means.

18 U.S.C. § 3664(m)(1)(A) (2024).

Similar to the after-the-fact allegations regarding the BSA, Plaintiff's *Complaint* fails to include any legal argumentation to support the conclusory and bare assertion that BPPR has acted in violation of the MVRA. A careful review of the *Complaint* reveals that Plaintiff makes no reference therein to the provisions of the aforementioned statute.[3] As stated above, the counts of the *Complaint* arise solely from the FDCPA and Puerto Rico law. Therefore, it is evident that Plaintiff intends to amend the Complaint through a brief in opposition to a motion to dismiss; a practice that is contrary to established and axiomatic precedent.[4] *Velázquez Ortiz*, 2012 U.S. Dist. LEXIS 54876, at *18; *Díaz-Zayas*, 600 F. Supp. 3d at p. 195. The Court should also disregard this cursory claim that is not accompanied by any developed legal argumentation to plausibly state the circumstances that may support a finding of a violation of the MVRA. *See Am. Bd. of Internal Med. v. Rushford*, 114 F.4th 42, 55 (1st Cir. 2024) (*citing United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[i]t is not enough merely to mention a possible argument in the most skeletal way,

---

[3] BPPR also notes, that the word "victim" is not mentioned in the *Complaint*.

[4] Rule 15(a) of the Federal Rules of Civil Procedure lays out the procedure a party must follow to amend a complaint before trial. It states that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Plaintiff did not seek nor obtain written consent, nor this Court's leave to amend the *Complaint*. Accordingly, BPPR opposes Plaintiff's attempt to amend its pleading to include references to the BSA and the MVRA and requests that the Court disregard Plaintiff's allegations to said end.

7

leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

### d. Nothing in the Opposition refutes that payments to BPPR in satisfaction of antecedent debts are not subject to FDCPA avoidance actions.

On pages 19 through 23 of the Opposition, Plaintiff claims that BPPR was not a secured creditor as to AMAC and thus, that the Complaint raises sufficient allegations to impute that BPPR did not act in good faith when it received payments from the Conjugal Partnership Pierluisi-González to satisfy three loans that were secured by mortgage liens. Plaintiff's argument, based on a cobweb of factual assertions that seek to obfuscate, are not supported by the case-law that Plaintiff cites.

The Opposition lays bare that the crux of the fraudulent avoidance claim pertains to money transfers, loans or payments by AMAC to the Conjugal Partnership Pierluisi-González that allegedly rendered AMAC insolvent to pay its debt of restitution. Plaintiff purport to keep BPPR as a Defendant, arguing that the Conjugal Partnership Pierluisi-González satisfied antecedent debts, allegedly, with funds that they received from AMAC. Plaintiff then weaves a narrative of a single fraudulent conveyance that allegedly includes the payments to BPPR. Even if Plaintiff plausibly succeeds in showing at the pleadings stage that AMAC and Mr. Pierluisi engaged in transactions to shield AMAC from its creditors, that has nothing to do with BPPR, a secured creditor who received payment for antecedent debts that were secured by mortgage liens.

BPPR did not owe any duties to AMAC in connection with the secured debts of the Conjugal Partnership Pierluisi-González, and thus, Plaintiff´s allegations that AMAC did not receive adequate consideration from Mr. Pierluisi pursuant to transactions between them, are irrelevant as to BPPR. In any event, BPPPR gave adequate consideration to the Conjugal

Partnership Pierluisi-González by cancelling their debts, which allowed the Conjugal Partnership Pierluisi-González to release the encumbered properties from the mortgage liens.

Plaintiff grounds its Opposition on conclusory and unsupported statements that BPPR was allegedly aware of the legal and financial situation of the transferor and of an alleged intent by "debtor" to pay some creditors and defraud others.[5] *See* Opposition at pp. 20-21. As established above, those conclusory statements are not accompanied by references to the Complaint and are ultimately unsupported. Nothing in the Complaint, save for conclusory statements that must be disregarded at the pleadings stage, establishes that BPPR was aware of Mr. Pierluisi's debt to the United States or a risk of insolvency. Much less that AMAC was a debtor to the United States or at a risk of insolvency.

Despite Plaintiff's best efforts to enlarge factual allegations, the Complaint remains fatally flawed as to BPPR: an outsider to the alleged scheme between AMAC and Mr. Pierluisi. Conclusory allegations that in any event are not found in the Complaint, that AMAC or Mr. Pierluisi had deposit accounts with BPPR, are plainly insufficient, particularly because, as stated above, there are no well-pleaded allegations of any banking duties owed to Mr. Pierluisi or AMAC.

As established in the *Motion to Dismiss*, with support in case law that Plaintiff chose not to address, mere knowledge of a debt is not enough to render a secured creditor liable in connection with fraudulent conveyance claims. *See United States v. Kirtland*, 2012 U.S. Dist. LEXIS 138577, *41-42 (D. Kan. Sept. 27, 2012) (*holding* that a good faith defense is not defeated by knowledge of the debt.). As a matter of law, a secured creditor who receives payment of an antecedent debt, does not have a duty to inquire further when its debtor satisfies the debt, even in circumstances not

---

[5] To support its conclusory allegation that BPPR "knew the debtor was intending not only to pay some creditors, but also to defraud others," Plaintiff references the United States Supreme Court's decision in *Van Iderstine v. National*, 227 U.S. 575 (1913). The Court should strike or disregard that legal reference because a citation cannot support a factual contention and because the citation is not accompanied by legal argumentation.

plead in the Complaint, where the transferee could have acquired knowledge of a potential fraud. *See In re Sharp Int'l Corp.*, 403 F.3d 43, 55-56 (2nd Cir. 2005) (*stating* that even knowledge that the funds used to repay the preexisting debt were fraudulently obtained does not in itself allow the inference that a creditor who received a payment acted in bad faith); *B.E.L.T., Inc. v. Wachovia Corp.*, 403 F.3d 474, 476-77 (7th Cir. 2005) (*holding* that a preference among creditors, did not entitle plaintiff to relief in circumstances where a bank which extended credit to a corporation, then ceased extending credit, but kept receiving payments for existing debts, after it suspected that "mischief was afoot.", and *rejecting* claim that the financial institution should have alerted other creditors or regulators that mischief was afoot or of the debtor's financial condition).

Throughout its Opposition, and particularly on pages 20 through 25, Plaintiff includes convoluted legal arguments that confound BPPR's argument that the payments that it received are preferences not subject to fraudulent conveyance or transfers with adequate consideration, with the good-faith transferee defense. Save for referencing general legal principles and inapposite case-law, Plaintiff's Opposition does not establish any circumstance pursuant to which any fraudulent intent between AMAC and Mr. Pierluisi could attach to BPPR as a factual or legal matter. Plaintiff cannot avoid dismissal by borrowing terms of art from case law, meanwhile the Complaint lacks factual content to impute knowledge on BPPR of any scheme by AMAC and Mr. Pierluisi to defraud any creditor. The cases that Plaintiff references are distinguishable and, contrary to what Plaintiff suggests, support dismissal.

We begin with the *U.S. v. Schippers*, 982 F. Supp. 2d 948 (S.D. Iowa 2013) decision. As the Opposition itself shows, the facts in *U.S. v. Schippers*, are inapposite, as the case does not involve a secured creditor such as BPPR. At issue in the *Schippers* case were objections by the debtor's wife, to restitution and garnishment orders over proceeds of the sale of marital property

and funds in a 401k account. Unlike the case at hand, the *Schippers* case involved an insider to the fraudulent scheme (a relative of the debtor). That is enough to reject Plaintiff's plea that the Court apply the *Schippers* decision to the payments issued to BPPR. Moreover, Plaintiff neglects to take heed of the fact that before addressing whether the wife was a good-faith transferee, the *Schippers* court considered the antecedent question whether she had ownership interests in the assets. Having found that the wife did not have any ownership or legal interests over the assets, the court then addressed, among others, the good-faith transferee defense, ruling that the wife lacked the requisite good-faith because she was aware of the husband's debt and financial situation, shared the husband's fraudulent intent, and had notice of said intent.[6] Also, the court considered dispositive that the wife, an insider, paid close to nothing for the transfers of marital property. Because the factual scenario pursuant to which the court found bad faith in the *Schippers* case is highly distinguishable, it does not support Plaintiff's conclusory assertions that the Complaint may be read as plausibly raising a claim that BPPR did not receive payment of its secured interests in good faith.

The decision by the Supreme Court of New York, Appellate Division, Third Department in *Ede v. Ede*, 193 A.D.2d 940 (N.Y. App. Div 1993), upon which Plaintiffs also relies, is likewise inapposite as it involved a transfer of property for a nominal amount of $1 with admitted fraudulent purposes. The Court's ruling on bad faith considered the bad faith intent of the transferor who admitted that he acted with intent to defraud his ex-wife after he accrued a debt towards her and others. Those facts are a far cry from this case.

---

[6] The court found that the wife "intermingled her motives with Ralph's intent to hinder, delay, and defraud his creditors," and "had notice that Ralph intended to defeat his creditors based on their agreement. Presumably, Marla was also aware of the restraining orders filed by two federal judges on Ralph's assets from June and July of that year." *Schippers*, 982 F. Supp. 2d at 973.

Plaintiff fares not better when it references *In re Sharp Int'l Corp*., 403 F.3d at 53, on page 20 of the Opposition. Plaintiff cursorily mentions said decision to state the principle that, in some circumstances, a transfer may be deemed to lack fair consideration if the transferee has actual or constructive knowledge of an intent to defraud. As shown in the *Motion to Dismiss* with reference to case-law, including the Second Circuit's decision in *In re Sharp Int'l Corp.,* that legal principle does not apply to BPPR; a secured creditor and an outsider, who received satisfaction of debts incurred by Mr. Pierluisi and his wife, prior to the orders of restitution and without actual or constructive knowledge of any intent by anyone to defraud the United States as a creditor.

In *In re Sharp Int'l Corp*., a trustee in bankruptcy argued that a bank suspected that a corporation was engaging in fraud but failed to sound the alarm and also received loan repayments from the corporation. The Second Circuit *dismissed* constructive and intentional fraudulent conveyance claims, finding that the trustee's legal theories did not warrant the requested relief. The Second Circuit relied on First Circuit precedents construing New York law to hold that the complaint did not adequately allege lack of fair consideration, finding that "the decisive principle . . . **is that a mere preference between creditors does not constitute bad faith**." *Id.* at 54 (emphasis added); *Id.* at 55 (*upholding* payment of loan that was incurred in good faith long before the transfer that was allegedly fraudulent). Of particular importance for the present case, the Second Circuit ruled that a payment made to an outsider on account of an antecedent debt, **was not fraudulent, even if allegations of subjective bad faith were considered**. *Id.,* at pp. 54-55.

In *In re Sharp Int'l Corp*., the Second Circuit also rejected the unsupported claim that plagues Plaintiff's Opposition: that BPPR did not act in good faith as it should have inquired further about transactions between AMAC and Mr. Pierluisi. To wit, in *In re Sharp Int'l Corp*., the Second Circuit held that the bank had no affirmative duty to inquire or act, because under New

York law (similar to Puerto Rico law as established in the *Motion to Dismiss*), the legal relationship between a borrower and a bank is contractual and does not create a fiduciary relationship between the bank and its borrower. In sum, the *In re Sharp Int'l Corp* supports the conclusion that the Complaint should be dismissed as filed against BPPR for failure to state valid claims for relief.

Furthermore, the Second Circuit's decision in *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 633 (2nd Cir. 1995), does not support Plaintiff's contention that the payments made by the Conjugal Partnership Pierluisi-González lack adequate consideration. The applicable and relevant rule that the Second Circuit affirmed in *HBE Leasing Corp.*, is that "even the preferential repayment of pre-existing debts to some creditors does not constitute a fraudulent conveyance, whether or not it prejudices other creditors." *Id.* at p. 634. And the only exception to that rule is where the preference is to debtor's shareholders, officers or directors. *Id.* Because that exception is not applicable to BPPR, the *HBE Leasing Corp.,* decision supports BPPR's request that the Complaint be dismissed in its entirety.

In light of the case-law discussed above and the case-law referenced in the *Motion to Dismiss*, there is no legal justification for Plaintiff's proposal in its Opposition that this Court rule that the transactions between AMAC and Mr. Pierluisi may plausibly taint the payments by the Conjugal Partnership Pierluisi-González to satisfy antecedent debts with BPPR. Factually, that claim of a single fraudulent conveyance as to BPPR is unsupported, because it is uncontested that BPPR did not partake in those transactions. The allegation that the Conjugal Partnership Pierluisi-González satisfied loans with BPPR shortly after they allegedly received loans, payments, or monies from AMAC, does not justify treating those separate transactions as one transaction in connection with BPPR, particularly because it is uncontested that BPPR is not an insider to any fraudulent scheme and its secured interest predates the alleged scheme. Plaintiff cannot

manufacture the existence of a single fraudulent conveyance where BPPR did not participate in each of the alleged fraudulent transactions and because there is no allegation to impute bad faith intent on BPPR. Moreover, as will be discussed, the fact that the Conjugal Partnership Pierluisi-González benefitted from paying their loans, destroys any claim of lack of adequate consideration.

### e. **Payments to satisfy the loans benefited BPPR's debtors.**

Plaintiff suggests that the satisfaction of the mortgage debts may plausibly be subject to recission because they allegedly only benefited third parties[7] and thus, BPPR cannot claim to have acted in good faith. *See* Opposition at pp. 23-25. One formulation of the contention is that Mr. Pierluisi used a check that he received from AMAC to pay one of the mortgages. The second formulation of Plaintiff's argument is that Mr. Pierluisi and his wife, transferred the properties to a third party; the WMP Trust Fund. The first contention fails because it ignores the undisputed fact that BPPR was not required to give consideration to AMAC as it did not engage in any transaction with AMAC. Moreover, Plaintiff ignores that the Conjugal Partnership Pierluisi-González received fair consideration as they were released of their liabilities with BPPR. The fact that they may have transferred ownership interests does not concern BPPR who is not an insider to any fraudulent scheme and did not participate in any determination by Mr. Pierluisi and his wife to transfer ownership of the properties. In fact, the Complaint does not even aver that BPPR knew that the properties were donated to the WMP Trust Fund.

---

[7] Plaintiff's only proposed legal support for this contention is a citation to a decision by the United States Bankruptcy Court for the District of Massachusetts in *In re Health Gourmet Inc.,* 29 B.R. 673 (Bankr. D. Mass. 1983). That case is also distinguishable. *In re Health Gourmet Inc.,* involved fraud in creating a security interest over the property of a debtor in bankruptcy. Said security interest was found to benefit an officer of the debtor in bankruptcy; not the debtor itself. No such scenario is here present, as BPPR's secured interest predates both the United States' interest as a creditor and the alleged scheme to defraud the United States. Given that BPPR's debtors received the consideration that they were due: satisfaction of the mortgage debts that allowed for cancellation of the mortgage liens, this is not a case where the payments to BPPR solely benefited a third party.

Finally, the allegation that Mr. Pierluisi satisfied one of the mortgages with a check from AMAC does not change the analysis. Plaintiff has not cited any legal authority or precedent to hold that a payment to a secured creditor may be annulled in circumstances where there is no controversy that the secured creditor **is not an insider** of the fraudulent scheme. Particularly because, as has been established in this Reply and in BPPR's *Motion to Dismiss*, mere knowledge of a debt is not enough to conclude that a transfer to a secured creditor does not involve fair consideration. *See Boston Trading Group, Inc. v. Burnazos,* 835 F.2d 1504, 1512 (1st Cir. 1987) ("to find a lack of 'good faith' where the transferee does not participate in, but only knows that the debtor created the other debt through some form of, dishonesty is to void the transaction because it amounts to a kind of 'preference' -- concededly a most undesirable kind of preference, one in which the claims of alternative creditors differ considerably in their moral worth, but a kind of preference nonetheless.").

**WHEREFORE**, BPPR respectfully requests that this Honorable Court grant the Motion to Dismiss at Dkt. 68, and issue an order and judgment dismissing the Complaint with prejudice as filed against BPPR.

**RESPECTFULLY SUBMITTED**.

**IT IS HEREBY CERTIFIED** that, on this same date, a true and exact copy of the foregoing document has been electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the legal representatives, entities, or persons registered in the system. Additionally, a copy of this motion will be sent via certified mail to pro-se defendant **Walter R. Pierluisi-Isern, Inmate No. 54012-510, FPC Pensacola, Federal Prison Camp, P.O. Box 3949, Pensacola, FL 32516.**

In San Juan, Puerto Rico, on January 10, 2025.



**DLA Piper (Puerto Rico) LLC**
Calle de la Tanca #500, Suite 401
San Juan, PR 00901-1969
Tel. 787.945.9106 / 787.945.9132
Fax 939.697.6141

*/s/ Margarita Mercado Echegaray*
Margarita Mercado Echegaray
USDC-PR No. 228901
margarita.mercado@us.dlapiper.com